## Richmond

### JAMES BRIAN HASKELL V. COMMONWEALTH OF VIRGINIA

April 21, 1978.

Record No. 770695.

### EARLE BRADLEY BIGGERSTAFF V. COMMONWEALTH OF VIRGINIA

April 21, 1978.

Record No. 770713.

### KEVIN LENDEN V. COMMONWEALTH OF VIRGINIA

April 21, 1978.

Record No. 770721.

*Charles E. Jenkins, II (Goldblatt, Lipkin, Cohen, Anderson & Jenkins,* on brief) for plaintiff in error.

*Linwood T. Wells, Jr., Assistant Attorney General (Anthony F. Troy, Attorney General,* on brief), for defendant in error.

*Peter G. Decker, Jr. (Chris A. Christie; Decker, Zoby, Collias & Christie,* on brief) for plaintiff in error.

*Linwood T. Wells, Jr., Assistant Attorney General (Anthony F. Troy, Attorney General, on brief) for defendant in error.*

*William L. Perkins, III (Stanley E. Sacks; Sacks and Sacks, on brief) for plaintiff in error.*

*Linwood T. Wells, Jr., Assistant Attorney General (Anthony F. Troy, Attorney General, on brief) for defendant in error.*

COCHRAN, J., delivered the opinion of the Court.

In each of these appeals, arising from the same series of events, the dispositive question for our determination is whether the evidence is sufficient to sustain the conviction of felony-murder,[1] *i.e.*, murder committed during commission of a felony.

James Brian Haskell, Earle Bradley Biggerstaff, and Kevin Lenden were indicted for attempted robbery and felony-murder of William M. Kantor. Haskell pleaded guilty to attempted robbery and not guilty to the murder charge. Tried by the court without a jury, he was found guilty under both indictments, and was sentenced to serve six years in the penitentiary for attempted robbery and 20 years for murder, the sentences to run concurrently. Biggerstaff pleaded not guilty to both charges. He was tried by a jury, which found him guilty under both indictments, and fixed his punishment at two years and 20 years, respectively. The trial court entered judgment on the verdicts, and ordered the sentences to run concurrently. Lenden pleaded guilty to attempted robbery and not guilty to the murder charge. He was tried by the court without a jury, was

---

[1]Under Code § 18.2-32 "[m]urder . . . in the commission of, or attempt to commit . . . robbery, . . . is murder of the first degree . . . ."

The statute, of ancient origin, has been construed to mean that a killing in the commission of or attempt to commit one of the enumerated felonies is murder of the first degree. *Akers v. Commonwealth*, 216 Va. 40, 47, 216 S.E.2d 28, 33 (1975). *See Jones's Case*, 1 Leigh (28 Va.) 598 (1829).

found guilty of both charges, and was sentenced to serve five years and 20 years, respectively, the sentences to run concurrently.

The evidence, viewed in the light most favorable to the Commonwealth, shows that Haskell, Biggerstaff, Lenden, and Rodney Gaynor, who had been shooting pool together on the evening of April 30, 1976, decided to commit a robbery. They rode around in a car which, although the others did not know it, Gaynor had stolen. Searching for a store to rob that had only one or two people inside, they could not find an acceptable target. After riding up and down Hampton Boulevard in the City of Norfolk, looking in vain for sailors to pick up and rob, they proceeded to a tavern on East Little Creek Road where Gaynor's wife worked, and stopped outside in the parking lot. By this time, it was after midnight in the early morning of May 1.

Observing a suitable prey, an intoxicated sailor hitchhiking in the road, the four men decided to rob him. The sailor, William M. Kantor, a Petty Officer First Class in the U. S. Navy, accepted Biggerstaff's invitation to ride home, entered the car, and went to sleep on the back seat while Gaynor drove to a quiet street. By prearrangement, at Biggerstaff's request, Gaynor stopped the car, and Haskell ordered Kantor to get out. As Kantor left the car, Gaynor hit the victim with his fist; then Haskell hit him with his fist, threw him to the ground, and struck him in the back of the head with Gaynor's .38 calibre pistol. The pistol fell to the ground, Kantor reached for it, but was overpowered by Gaynor and Haskell. Lenden picked up the pistol and twice struck Kantor in the head with it. Gaynor kicked Kantor in the groin, Haskell kicked him in the face, and both held him on the ground while Biggerstaff and Lenden searched in his back pockets for his wallet. They found neither wallet nor money.

In each case, the foregoing facts, established by the post-arrest statements given to an investigating officer by Gaynor and the defendant who was on trial in the case, were sufficient to sustain the attempted robbery conviction.

In his statement introduced into evidence in each case by the Commonwealth, Gaynor described the events which followed the beating and unsuccessful search of Kantor. Gaynor said that he and his companions planned to drive away and leave Kantor in the street. As they tried to get back into the car, however,

Kantor attempted to reenter the vehicle "to get hold of somebody." Gaynor trained his pistol on Kantor and threatened to shoot him if he did not go away. Kantor refused to leave and told Gaynor "to go ahead and shoot" him. Lenden also warned Kantor that Gaynor would shoot him if he did not leave, but again Kantor did not move. Telling Haskell that "he was dead," Kantor swung at Gaynor and ran after Haskell, while Gaynor and Lenden got into the car. When he saw that Gaynor was trying to start the motor, Kantor ran to the passenger side and attempted to enter the vehicle. Gaynor stated, "I knew . . . what he would do to me" if he got into the car, so "that's when I shot him" in the chest. Gaynor said that, although Kantor had tried to get back into the car "[t]o get his hands on one of us," particularly Haskell, "I wouldn't of shot the dude, if he hadn't tried to hurt me." The impact of the bullet propelled Kantor backward into a fence along the street. "After he hit the fence, everybody ran into the car," and the four assailants sped away.[2]

In his statement, introduced into evidence against him at his trial, Haskell said that Kantor came after him and the others as they returned to the car; that Kantor got to his feet and "grabbed the back" of Haskell's shirt but Haskell broke away and ran to the car; that Kantor opened the door on the passenger side and said he was going to kill the men; that Lenden told Kantor he was "crazy"; and that he and Lenden were climbing into the back seat of the vehicle when he heard the fatal shot. After they returned to their living quarters, Gaynor, Haskell, and Biggerstaff wiped Kantor's blood off the car.

Haskell's testimony did not vary significantly from his earlier statement. He supplied the additional information that he, Gaynor, Lenden, and Biggerstaff were shipmates on the U.S.S. Josephus Daniels, and shared an apartment at Ocean View. He also testified that the Gaynor car was about five feet away from Kantor during the time that the victim was being beaten and searched, and that Haskell and his friends neither assisted Kantor after the shooting nor reported the crime.

In his statement, introduced against him at his trial, Biggerstaff asserted that when Haskell released Kantor after no

[2]The evidence is uncontradicted that the occupant of a house on Colin Drive heard the shot, saw a body lying against his fence and an automobile speeding from the scene, and reported this information to the police. Kantor was dead from the pistol wound when the Rescue Squad arrived. A blood test revealed that there was 0.16 per cent by weight by volume of alcohol in his blood.

money had been found, Kantor said "he was going to get us," chased Haskell, "started arguing," and said he was going to "get" Haskell. Gaynor pointed his pistol at Kantor and threatened to shoot him. Kantor said, "Go ahead and shoot me," and, "Look at my face," and chased Haskell again, seizing him by the shoulder. Haskell freed himself, Kantor fell down, and Gaynor tried to start the engine. When Kantor got up and attempted to enter the passenger side, Gaynor shot him. Biggerstaff stated that he did not intend to harm Kantor. He did not think Gaynor would actually use the pistol except as a threat and that was the only reason he "went along with what they wanted to do." After the shooting, the four men returned to two apartments at Ocean View, he and Haskell sharing one, and Gaynor living in the apartment next door.

Testifying in his own defense, Biggerstaff agreed with his counsel that, in spite of his not guilty plea, he was probably guilty of attempted robbery. He maintained that he got back into the car after Kantor threatened to kill Haskell, and the others argued with Kantor on the street. When Haskell escaped from Kantor's grasp, Kantor opened the door on the passenger side of the front seat and came towards Gaynor. Gaynor ordered him to get out and then shot him. Upon Biggerstaff's return to his apartment with Lenden, they drank beer.

In his statement, introduced against him at his trial, Lenden said that when he and his friends started to reenter the car, Kantor got in front of Gaynor. Lenden seized Kantor by the arm and "tried to tell him to go away, that he might get shot." Kantor then chased Haskell around the car, fell down, regained his feet, and came back to where Lenden was standing. Gaynor and Biggerstaff were inside the car, Biggerstaff sitting on the back seat, when Kantor "started crawling" into the front. Lenden heard the pistol shot and saw Kantor fall back to the fence and to the ground.

Lenden's testimony at trial enlarged somewhat upon his statement. He testified that when he intervened between Gaynor and Kantor and attempted to convince Kantor that the altercation had ended, Kantor said, "Look at my face," and Lenden saw that it was bleeding. Lenden told Kantor that his face would "be all right in a little while," but that if he persisted in his actions he might get shot. According to Lenden, Kantor did not try to hit him, although Lenden was within reach and

was holding Kantor's arm. In further answer to his counsel's questions, however, Lenden asserted that he had released Kantor's arm during their conversation, and that they continued to stand close to each other without incident until Kantor saw Haskell and followed him around the car, threatenting to kill him.

Haskell, Biggerstaff, and Lenden argue that as a matter of law the homicide did not occur during the commission of a felony, because the attempted robbery had been abandoned before the altercation between Kantor and Gaynor ended in the fatal shooting of Kantor. Ancillary to this argument is Biggerstaff's contention that the trial court in his case erred in refusing his proffered Instruction "D", which provides as follows:

> "The Court instructs the jury that the felony-murder doctrine does not apply where the killing takes place while the defendant is attempting to escape; and unless you believe beyond a reasonable doubt that the killing took place during the alleged attempted robbery, than you must find the defendant not guilty of murder."

We reject these arguments as untenable. The reliance of all three appellants upon *Mason* v. *Commonwealth*, 200 Va. 253, 105 S.E.2d 149 (1958), and *Durham* v. *Commonwealth*, 214 Va. 166, 198 S.E.2d 603 (1973), is misplaced.

In *Mason,* the question was whether the accused was guilty of robbery. The evidence showed that he broke into and entered a store in which the proprietor was hiding. After the accused had handed a television set through a broken window to a confederate standing outside, the proprietor struck the accused, who turned, threw a portable radio at the proprietor, and shot at him four times. Thus, the violence and intimidation occurred after, rather than before or contemporaneously with, the taking. We reversed the conviction of robbery because the intimidation exerted after the taking "for the purpose of retaining a possession already acquired, or to effect escape" was insufficient to constitute common law robbery.

*Durham* likewise is inapposite. The defendant and an accomplice broke into and entered a house with the intent to commit larceny. The evidence justified the inference that the thieves were surprised by the sudden appearance of the owner,

and their intent to commit larceny promptly changed to an intent to commit robbery by using force and violence to overcome the owner's interference with the taking, so that the fatal stabbing of the owner, being a homicide committed during the commission of robbery, or attempted robbery, was felony-murder. The putting in fear and the violence were concurrent or concomitant with the taking or attempted taking, thereby supplying the prerequisite for robbery which was absent in *Mason*. The dictum, to which appellants attach great significance, merely states that this was not a case where the homicide was committed to retain possession already acquired or to effect an escape. *Id.* at 170, 198 S.E.2d at 607. The meaning of this statement is that, under the rationale of *Mason*, if the force and violence occurred after the taking, or during an attempt to escape, it could not be applied retrospectively to convert into the felony of robbery what would have been the lesser offense of larceny.

Haskell and Lenden rely chiefly upon *People* v. *Marwig*, 227 N.Y. 382, 125 N.E. 535 (1919), and *People* v. *Jackson*, 20 N.Y.2d 440, 285 N.Y.S.2d 8, 231 N.E.2d 722 (1967), *cert. denied*, 391 U.S. 928 (1968), as authority for the principle that a homicide committed during escape after a felony has been abandoned does not constitute felony-murder. In *Marwig*, the accused and an accomplice entered a jewelry store with the intent to rob the owner. The owner fled into an adjoining store, but the robbers were surprised by the appearance of another person, and ran into the street. The owner pursued them and seized Marwig, whose accomplice fatally shot the owner to enable Marwig to escape. The court held that Marwig and his companion had completed their felonious act, had abandoned it, were running away, and were not engaged in the commission of a robbery when the homicide was committed. In *People* v. *Walsh*, 262 N.Y. 140, 186 N.E. 422 (1933), the court, while acknowledging that escape may, under certain circumstances, be a part of the commission of a crime, cited *Marwig* with approval for the rule that when there is a "complete intervening desistance from the crime, as by the abandonment of the loot and running away," the subsequent homicide is not felony-murder. 262 N.Y. at 148, 186 N.E. at 424. To the same effect is *Jackson*.

The *Marwig* rule espoused by the New York courts, representing a strictly minority view, is contrary to the

overwhelming weight of authority. Moreover, the New York felony-murder statute has now been amended to include a homicide committed while in immediate flight from the felony.[3]

The prevailing rule was stated in *State* v. *Adams*, 339 Mo. 926, 933, 98 S.W.2d 632, 637 (1936), to be that when the homicide is within the *res gestae* of the initial felony and is an emanation thereof, it is committed in the perpetration of that felony. Thus, the felony-murder statute applies where the initial felony and the homicide were parts of one continuous transaction, and were closely related in point of time, place, and causal connection, as where the killing was done in flight from the scene of the crime to prevent detection or promote escape. The defendant's felony-murder conviction was upheld, where the evidence showed that he and an accomplice committed a burglary and that the accomplice killed a law enforcement officer during their escape. *See* Annot., 58 A.L.R.3d 851.

In *Bizup* v. *People*, 150 Colo. 214, 218, 371 P.2d 786, 788, *cert. denied*, 371 U.S. 873 (1962), the *res gestae* rule was applied and the conviction of felony-murder was affirmed because the robbery and killing were so closely connected in point of time, place, and continuity of action as to be one continuous transaction. In *State* v. *Nelson*, 65 N.M. 403, 338 P.2d 301, *cert. denied*, 361 U.S. 877 (1959), the court, citing cases from various other jurisdictions, held that a killing within the *res gestae* of the felony is felony-murder, whether the killing occurs before or after the felony.

New Jersey also follows the *res gestae* theory in applying the felony-murder statute. *State* v. *Artis*, 57 N.J. 24, 269 A.2d 1 (1970). There, the defendant robbed the victim, who was drunk, then straddled him, choked him on the ground in an alley, and finally killed him by running over his prostrate body with the victim's automobile. The killing was held to be inseparable from the planned crime, and the conviction of felony-murder was affirmed.

---

[3] *See People* v. *Fitzpatrick*, 61 Misc.2d 1043, 308 N.Y.S.2d 18, *appeal denied*, 34 App. Div.2d 730, 311 N.Y.S.2d 577, *appeal dismissed*, 27 N.Y.2d 742, 314 N.Y.S.2d 992, 263 N.E.2d 390 (1970), where the motion to dismiss counts of an indictment charging the accused with felony-murder was denied. The accused was charged with having committed a robbery in one county and having killed a police officer in another county while in immediate flight from the robbery.

The felony-murder rule was extended in Pennsylvania under a proximate cause theory to affirm the conviction of murder of a defendant who had participated in a robbery, where an off-duty policeman attempting to apprehend the robbers was killed, even if the fatal bullet was fired by another policeman also acting in opposition to the felony. *Commonwealth* v. *Almeida*, 362 Pa. 596, 68 A.2d 595 (1949). This case was expressly overruled, however, by *Commonwealth Ex Rel. Smith* v. *Myers*, 438 Pa. 218, 261 A.2d 550 (1970), a *habeas corpus* appeal, treated as a delayed direct appeal of conviction, initiated by a robber who was accompanying Almeida when the off-duty policeman was slain, and who had been convicted of the same felony-murder. The Pennsylvania Supreme Court rejected the proximate cause rationale, and reaffirmed the pre-*Almeida* felony-murder concept that the malice required to establish murder is imputed from the initial felony to whatever else the criminal may do in connection therewith, so that to constitute murder, the killing must have been done by the defendant or an accomplice or confederate or one acting in furtherance of the felonious undertaking. 438 Pa. at 228, 261 A.2d at 555. *See also Commonwealth* v. *Redline*, 391 Pa. 486, 137 A.2d 472 (1958).

*People* v. *Salas*, 7 Cal.3d 812, 500 P.2d 7, 103 Cal. Rptr. 431, 58 A.L.R.3d 832 (1972), *cert. denied*, 410 U.S. 939 (1973), followed the landmark case of *People* v. *Boss*, 210 Cal. 245, 290 P. 881 (1930), and held that the felony-murder statute was applicable where the homicide was committed by the fleeing robber within six or seven minutes after the robbery. Although the defendant received the benefit of instructions that were unduly favorable to him, the jury, in finding the defendant guilty, must necessarily have found that the homicide was committed before he reached a place of safety, and his conviction was affirmed. In California, it is held in respect to the felony-murder rule, that a robbery is not terminated until the robber has won his way to a place of temporary safety.

In *Commonwealth* v. *Dellelo*, 349 Mass. 525, 209 N.E.2d 303 (1965), it was held that an attempted robbery is not ended merely because one or both of the robbers may wish to terminate the effort and to escape, and one shoots in pursuance of that purpose. Whether the act of escape or flight is a continuous part of the attempted or accomplished crime is for the jury to determine.

In the present cases, the acts of appellants prior to the shooting of Kantor were sufficient to sustain the convictions of attempted robbery. We agree with appellants, and the Commonwealth concedes, that escape is not an element of the crime of attempted robbery. It was for the fact finder to determine in each case, however, whether the attempted robbery had been terminated within the purview of the statute.[4] In making this determination, it was proper to consider the time and place of the killing. The fact finder could conclude from the evidence that the killing occurred within five feet of the spot where Kantor was beaten and searched, and within moments after the victim had regained his feet.

■ It is quite apparent that all four of Kantor's assailants sought to escape from the scene of the attempted robbery without being identified or apprehended. Lenden's effort to placate Kantor was no more than an attempt to facilitate escape by avoiding further trouble. It is a reasonable inference that Kantor, who demonstrated a measure of courage that shocked his assailants, sought to seize and restrain either Haskell or Gaynor, his chief tormentors, until help could be summoned or until he could compel disclosure of the identities of the four men. Whatever may have been his motive, he was determined to prevent at least one of his assailants from escaping. The killing was closely related in time, place, and causal connection to the attempted robbery. Indeed, the two crimes were inextricably interwoven. There was a continuity of evil action. The rule which we adopt, therefore, consistent with the weight of authority

---

[4]The trial court in the Biggerstaff case gave, *inter alia*, these two instructions:

"INSTRUCTION 4

"The Court instructs the jury that if you believe from the evidence beyond a reasonable doubt that Rodney Maurice Gaynor and the defendant had agreed, planned or designed to rob the victim, and that while so engaged Rodney Maurice Gaynor shot and killed William Kantor, and that such a shooting should have been contemplated as a probable result of the execution of such common design, each is equally guilty of homicide."

"INSTRUCTION 5

"The Court instructs the jury that even though you may believe from the evidence that Rodney Maurice Gaynor did not intend to kill the deceased, if you further believe from the evidence beyond a reasonable doubt that the deceased was killed while Gaynor, the defendant, and two other persons were in the act of attempting to commit robbery, you shall find the defendant guilty of murder in the first degree and fix his punishment at confinement in the penitentiary for life or for any term not less than twenty years."

elsewhere, is that the felony-murder statute applies where the killing is so closely related to the felony in time, place, and causal connection as to make it a part of the same criminal enterprise.

■ Haskell's contention that the evidence is insufficient to show that he was a principal in the second degree to the murder of Kantor is irrelevant. All that the Commonwealth had to prove was that Kantor was killed while Haskell and his associates were engaged in the felony of attempted robbery. The trial court, in convicting Haskell of felony-murder, so found. It makes no difference that Haskell, or even Gaynor, did not intend that Kantor be killed. Having participated in the first felony, Haskell is responsible, together with Gaynor and the other two confederates, for Kantor's slaying. Indeed, in *Durham*, the evidence indicated that the accomplice, rather than the defendant, stabbed the victim to death.

■ The trial court in the Biggerstaff case correctly refused to give Instruction "D". This instruction, which would have rendered the felony-murder statute inapplicable, as a matter of law, to a homicide committed during escape from a felony, expresses a legal concept which we disapprove. We do not say, however, that in every case a homicide committed during escape from a felony must be construed, as a matter of law, to come within the felony-murder statute. Usually, as in the present cases, the question will present an issue of fact to be determined from the evidence.

■ Here, the evidence is sufficient to support all three convictions. In *Lenden* the trial court filed a written opinion in which it based its finding of felony-murder on the *res gestae* doctrine. In *Haskell* the trial court also found the defendant guilty of felony-murder by virtue of the *res gestae* doctrine. In *Biggerstaff* the jury verdict was based upon the felony-murder instructions that were given, and judgment was entered on the verdict.

We hold that there was no reversible error in the judgments of conviction entered by the trial courts, and they will be affirmed.

*Affirmed.*