## Richmond

PATRICIA ANN WOODEN

v.

COMMONWEALTH OF VIRGINIA

December 4, 1981.

Record No. 810553.

Present: All the Justices.

*John B. Mann (Levit & Mann,* on briefs), for appellant.
*Thomas D. Bagwell, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

In this appeal, the question for our determination is whether under Virginia's felony-murder statute, Code § 18.2-32,[1] one of the perpetrators of an armed robbery may be convicted of felony-murder for the killing of a co-felon by a resisting victim of the robbery.

---

[1] Under Code § 18.2-32 "[m]urder . . . in the commission of, or attempt to commit . . . robbery . . . is murder of the first degree. . . ."

Patricia Ann Wooden pleaded not guilty to indictments charging her with the felony-murders of Walter Wallace Randolph, Jr. and Richard Earl Anthony. Randolph, the victim of a robbery in which Wooden participated, was killed during the robbery. Before his death, Randolph killed Anthony, one of the robbers.

Wooden's first jury trial resulted in verdicts of guilty on both felony-murder charges, but the trial court granted a post-trial defense motion for a mistrial. At her second jury trial, Wooden was again found guilty on both charges, the jury fixing her punishment at the statutory minimum of twenty years for each offense.[2] The trial court entered judgment on the jury verdicts and directed that the sentences run consecutively. In her appeal, Wooden challenges only her conviction for the felony-murder of Anthony, her co-felon.

The evidence, viewed in the light most favorable to the Commonwealth, suffices to support a finding that Wooden was a willing participant in the robbery. About ten o'clock on the evening of August 13, 1978, Wooden knocked on the door of Randolph's apartment. Kalinda Henry, described at trial as Randolph's fiancee, opened the door. Wooden identified herself as "Ann," stated that she was having car trouble, and asked if she could use the telephone. After Henry showed Wooden where the telephone was located, two men entered the open door with guns and demanded money. The men pushed Henry upstairs and began searching closets and drawers. When Henry told the men she had only five dollars, they slapped her, brought her back downstairs, bound her by taping her hands, ankles, mouth and eyes, and left her on the floor in the living room. When the intruders brought Henry downstairs, she noticed that a third man had joined the group.

As Henry lay on the floor, she maneuvered herself until she could see "a very small bit" beneath the tape covering her eyes. She saw Wooden holding a pillow case Henry knew contained coins. Wooden was wearing one of Henry's bathrobes, which was later found by the police in the parking lot outside the apartment. Henry saw the robbers bring into the living room a television and a stereo in addition to the pillowcase. Wooden sat at a table in the living room with one of the robbers. According to Henry, Anthony

---

[2] Code § 18.2-32 makes felony-murder a Class 2 felony. Code § 18.2-10 authorizes a term of imprisonment from twenty years to life as the punishment for Class 2 felonies.

told Wooden "she could leave if she wanted to, if she didn't want to stay there and see what would happen." Wooden told Henry that she should cooperate with the men because they "did the same thing" to Wooden's "old man." Wooden further said that she and Henry were in "the same boat," and that if Henry didn't cooperate the men would kill them both.

In response to a question, Henry told the intruders that Randolph would be home about 1:00 a.m., after work. The intruders waited in the apartment for Randolph to arrive. About 1:00 a.m., Henry heard a key in the door, followed by a succession of shots. After the robbers left, Henry managed to free herself enough to go to the next apartment for help. Investigating officers called to the scene found Randolph dead of gunshot wounds to the head and chest and Anthony dead from a single bullet to the left chest. Both bodies were lying near the front door. Randolph had $1,920 in cash in his front pocket.

Clarence E. Frye, one of the robbers who pleaded guilty to the murder of Randolph prior to Wooden's trial, testified as a defense witness. Frye stated that the purpose of the robbery and confrontation with Randolph was to recover money Randolph owed from dealings in illegal drugs. Frye said that he fell asleep waiting for Randolph to return to the apartment. Shots awakened him, at which time he discovered that Randolph and Anthony apparently had exchanged shots. Frye then shot Randolph. Frye said that Wooden was in the living room at the time the shootings occurred in the hallway and had nothing to do with either shooting.

█ We begin our analysis of the applicable law with the observation that although felony-murder is a statutory offense, it includes the elements of common-law murder. When the legislature enacted § 18.2-32 it defined the conduct it sought to punish as nothing more than "[m]urder" in the commission of one of certain other enumerated felonies. Since murder is not elsewhere defined in the Code,[3] murder for purposes of the felony-murder statute is common-law murder coupled with the contemporaneous commission or attempted commission of one of the listed felonies.[4]

---

[3] Section 18.2-31 defines "capital murder," but only as a particular variety of common-law murder punishable by death.

[4] In *Haskell* v. *Commonwealth*, 218 Va. 1033, 143 S.E.2d 477 (1978), *infra,* we explained that "contemporaneous" for purposes of felony-murder means that "the killing is so closely related to the felony in time, place, and causal connection as to make it part of the same criminal enterprise." 218 Va. at 1044, 243 S.E.2d at 483.

At common law, a homicide is not murder unless done with malice. "Malice aforethought is the grand criterion which distinguishes murder from other killings." *M'Whirt's Case,* 44 Va. (3 Gratt.) 594, 605 (1846). "The test of murder is malice. Every malicious killing is murder either in the first or second degree—the former if deliberate and premeditated, and the latter if not." *Jacobs* v. *Commonwealth,* 132 Va. 681, 686, 111 S.E. 90, 92 (1922), quoted with approval in *Perkins* v. *Commonwealth,* 215 Va. 69, 73, 205 S.E.2d 385, 387 (1974). With Code § 18.2-32, the legislature made killing with malice while committing or attempting to commit one of certain other specified felonies a form of first-degree murder. Neither premeditation nor an intent to kill is an element of felony-murder, but malice is. *See Robertson* v. *Commonwealth,* 1 Va. Dec. 851, 856, 20 S.E. 362, 364 (1894).

"Malice inheres in the doing of a wrongful act intentionally or without just cause or excuse, or as a result of ill will. . . ." *Dawkins* v. *Commonwealth,* 186 Va. 55, 61, 41 S.E.2d 500, 503 (1947). Where a person maliciously engages in criminal activity, such as robbery, and homicide of the victim results, the malice inherent in the robbery provides the malice prerequisite to a finding that the homicide was murder. And, all of the criminal participants in the initial felony may be found guilty of the felony-murder of the victim so long as the homicide was within the *res gestae* of the initial felony. *Haskell* v. *Commonwealth,* 218 Va. 1033, 243 S.E.2d 477 (1978).

Wooden maintains that we should not apply the *Haskell* rule to the killing of Anthony, because Anthony was not killed by one of the criminal participants in the initial felony. The evidence shows that Randolph, the victim of the initial felony, killed Anthony. Because there is no evidence that Randolph killed Anthony with malice, Wooden asserts that there is no evidence of malice in the death of Anthony that can be imputed to her under the felony-murder rule as applied in *Haskell.*[5] We agree.

---

[5] There is no merit in the Commonwealth's contention that Wooden should be barred by Rule 5:21 from raising this issue on appeal since she did not move the trial court to dismiss this felony-murder indictment on the ground now asserted. At trial, Wooden proffered Instruction "D" which would have told the jury that the law is just what she now claims it to be in this appeal. She objected with sufficient particularity to the trial court's refusal to grant the instruction.

The evolution of felony-murder law in Pennsylvania is instructive.[6] In *Commonwealth* v. *Almeida,* 362 Pa. 596, 68 A.2d 595 (1949), *cert. denied,* 339 U.S. 924, *reh. den.,* 339 U.S. 950, *cert. denied,* 340 U.S. 867 (1950), the Supreme Court of Pennsylvania adopted a proximate-cause theory of liability for felony-murder. The court affirmed the conviction of the defendant for the felony-murder of an innocent third party killed by the return fire of police officers. The court stated that "he whose felonious act is the *proximate cause* of another's death is *criminally* responsible for that death and must answer to society for it exactly as he who is *negligently* the *proximate cause* of another's death is *civilly* responsible for that death and must answer in damages for it." 362 Pa. at 603-04, 68 A.2d at 599-600.

Six years after *Almeida,* the Pennsylvania Court faced a factual situation similar to the instant case in *Commonwealth* v. *Thomas,* 382 Pa. 639, 117 A.2d 204 (1955). In *Thomas,* a grocery-store owner killed an accomplice of the defendant while the defendant and the accomplice were fleeing after robbing the store owner. The court concluded that the robbery was the proximate cause of the death and that there was no sound basis for distinction because the person killed was a co-felon killed by the felony victim, rather than a victim or a third party killed by the co-felon. 382 Pa. at 644-45, 117 A.2d at 206.

The Supreme Court of Pennsylvania first abandoned its proximate-cause theory in *Commonwealth* v. *Redline,* 391 Pa. 486, 137 A.2d 472 (1958). The court expressly overruled *Thomas* and held that a defendant could not be convicted of the murder of his co-felon killed by a police officer attempting to apprehend the criminals after a robbery. Since the police officer's killing of the defendant's co-felon was justifiable homicide, the court reasoned that the defendant could not be held criminally responsible for the officer's lawful act. 391 Pa. at 509, 137 A.2d at 483. Thus, the court stated that *Thomas* had been "an unwarranted judicial extension" of the felony-murder rule. 391 Pa. at 508, 137 A.2d at 482.

---

[6] "The development in Pennsylvania of case law concerning the criminal liability of a defendant for a killing done by one attempting to resist a felony attempted by defendant has been the subject of a great deal of discussion by courts and commentators. The Pennsylvania cases have added importance because they have been cited and relied upon by numerous courts in other jurisdictions." 56 ALR3d 239, 246. (Footnotes omitted). See the discussion of Pennsylvania cases in *Haskell, supra,* 218 Va. at 1042, 243 S.E.2d at 482.

Similarly, in *Commonwealth, ex rel. Smith* v. *Myers,* 438 Pa. 218, 261 A.2d 550 (1970), the court overruled *Almeida. Smith* was a habeas corpus appeal, treated as a delayed direct appeal, by one of Almeida's co-felons convicted of the same felony-murder as Almeida. The court followed *Redline* in reversing Smith's conviction for the felony-murder of his co-felon. The court reaffirmed the statement in *Redline* that "[t]he decision in the Almeida case was a radical departure from common law criminal jurisprudence." 438 Pa. at 224, 261 A.2d at 553. The court noted that the "thorough documentation" of authority in *Redline* "proved beyond a shadow of a doubt that *Almeida* and *Thomas* constituted aberrations in the annals of Anglo-American adjudicature." *Id.*

In the present case, the Commonwealth urges us to adopt the proximate-cause theory of felony-murder that was rejected by the Pennsylvania court in *Redline* and *Smith.* The Commonwealth relies primarily upon *State* v. *Baker,* 607 S.W.2d 153 (Mo. 1980), and a series of felony-murder cases from the State of Florida.

*Baker,* like *Thomas* and *Redline,* is indistinguishable factually from the present case. In *Baker,* the court affirmed the felony-murder conviction of a robber whose co-felon was killed by the robbery victim during the course of the robbery. The court echoed the rationale of *Thomas,* repudiated in *Redline,* that the defendant was answerable for the death of his co-felon on "a foreseeability-proximate cause concept of homicide responsibility." 607 S.W.2d at 156. *Baker,* however, represents a distinctly minority view.[7]

The Florida cases cited by the Commonwealth rest on a different footing. The Florida legislature has explicitly provided that "[w]hen a person is killed in the perpetration of . . . robbery . . . by a person other than the person engaged in the perpetration of . . . such felony, the person perpetrating . . . such felony shall be guilty of murder in the second degree. . . ." Section 782.04(3)

---

[7] *Redline* is the leading case for the majority position that a defendant is not criminally responsible for the felony-murder of his co-felon killed by the victim of the initial felony. *See also Weick* v. *State,* 420 A.2d 159 (Del. 1980); *Jackson* v. *State,* 589 P.2d 1052 (N.M. 1979); *State* v. *Canola,* 73 N.J. 206, 374 A.2d 20 (1977); *People* v. *Antick,* 15 Cal.3d 79, 539 P.2d 43 (1975); *Alvarez* v. *Dist. Ct.,* 525 P.2d 1131 (Colo. 1974); *Sheriff, Clark County* v. *Hicks,* 89 Nev. 78, 506 P.2d 766 (1973); *People* v. *Morris,* 1 Ill. App.3d 566, 274 N.E.2d 898 (1971); *Commonwealth* v. *Balliro,* 349 Mass. 505, 209 N.E.2d 308 (1965); *People* v. *Washington,* 62 Cal.2d 777, 402 P.2d 130 (1965); *People* v. *Austin,* 370 Mich. 12, 120 N.W.2d 766 (1963); *People* v. *Wood,* 8 N.Y.2d 48, 167 N.E.2d 736 (1960); *but, cf. In Re Leon,* 410 A.2d 121 (R.I. 1980).

Florida Statutes (1975). On the basis of this statute, the Florida Supreme Court has affirmed convictions for "second-degree" felony-murder on facts indistinguishable from those in the present case. *See Mikenas* v. *State,* 367 So.2d 606 (Fla. 1978); *State* v. *Leonard,* 376 So.2d 427 (Fla. App. 1979); and *State* v. *Wright,* 379 So.2d 96 (Fla. 1979).

In enacting § 782.04(3), however, it appears that the Florida legislature established a special category of "second-degree" felony-murder which by its terms included no element of malice. The only elements of Florida's second-degree felony-murder are (1) the killing of any person, (2) in the perpetration of a specified felony, (3) by a person other than the person engaged in the perpetration of such felony, where (4) the defendant is one of the persons perpetrating the felony. In Florida, then, the legislature has dispensed with the necessity of imputing malice from the person committing the homicide to the defendant.

Since malice is an element of Va. Code § 18.2-32 felony-murder, the Commonwealth's position would require the elimination of proof of malice as a prerequisite to conviction under our felony-murder statute. If the statute is to be so amended, this result should be accomplished by legislative action rather than by judicial fiat.

For the foregoing reasons, we hold that under § 18.2-32, a criminal participant in a felony may not be convicted of the felony-murder of a co-felon killed by the victim of the initial felony. Accordingly, we will reverse the judgment of the trial court convicting Wooden of the felony-murder of her co-felon, Anthony, and dismiss the indictment.

*Reversed and dismissed.*