COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judges Coleman and Fitzpatrick
Argued at Richmond, Virginia


JAMES DOUGLAS RILEY

v.   Record No. 1781-94-2          MEMORANDUM OPINION[*] BY
                                   CHIEF JUDGE NORMAN K. MOON
COMMONWEALTH OF VIRGINIA               DECEMBER 29, 1995

          FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    James B. Wilkinson, Judge

          Prescott L. Price, for appellant.

          Michael T. Judge, Assistant Attorney General
          (James S. Gilmore, III, Attorney General, on
          brief), for appellee.



     James Douglas Riley appeals his conviction for second degree

murder in the death of Chamont Brownlee, a seven-month-old

infant.  Riley argues that there was insufficient evidence to

support his conviction, that the trial judge erred in failing to

consider certain evidence, and that the trial judge improperly

considered his own opinion on water temperature as a basis of the

verdict.  We affirm the conviction.

     On the evening of January 22, 1994, Bridget Brownlee left

her seven-month-old son, Chamont, in the care of her boyfriend

Riley.  Also left with Riley were Chamont's brother Chris, two

years old, and his brother LaQuinn, seven years old.  Chris was

Riley's son, but Chamont was not.  Riley frequently complained to

Ms. Brownlee about the fact that Chamont was not his son.

     According to Riley's statement to the police, both of the

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

younger boys "messed on themselves" after their mother left and he decided to give them a bath. He stated that he ran about six inches of water, tested the temperature of the water, and placed both children in the tub. He at first told police that he had shut the water off before leaving the children in the tub, but when it became apparent that the police did not believe his account, he said that he might have left the water running. He said that he went downstairs for several minutes, heard crying, and went upstairs to find Chris beside the tub pointing, and Chamont in the bathtub "laying on his side." The children had been in Riley's care for less than an hour and a half.

Riley went to a neighbor's house to call 911, stayed at the neighbor's for about twenty minutes, and then returned to the apartment. He appeared upset, but would not tell his neighbors what was wrong.

When Chamont arrived at the hospital, he had full thickness burns over 90% of his body. The only areas spared were his armpits, the back of his scalp, and a small area at the back of the neck. According to the pathologist, the burns were consistent with his being placed face down in the water.

The burn specialist testified that it would take approximately fifteen seconds for water at a temperature of 120 degrees to burn a child so severely. At a lower temperature, such burns would take longer. In the specialist's opinion, Chamont's burns were the result of exposure to a very high temperature for a short time. An engineer from the Richmond

Redevelopment and Housing Authority tested the water in the apartment and found that it could reach a temperature of 131 degrees.

The medical examiner who performed the autopsy agreed that the burns were likely caused by a short period of exposure to very hot water. He based this on Chamont's clenched position and also the lack of any evidence of drowning.

In addition to the burns, Chamont had two bruised areas on his head. Due to the extensive burns, the medical examiner could not see the bruises until he began the autopsy. The bruises were very severe -- the brain surface itself was bruised. The medical examiner testified that these injuries would produce significant behavior changes, and indeed were potentially fatal. The medical examiner concluded that the most likely cause of death was a combination of the burns and the head trauma. The trauma likely took place between four and thirty-six hours before examination. Chamont lived four hours after he arrived at the hospital.

Ms. Brownlee testified that Chamont had no bruises on his head when she left the house and had behaved normally throughout the day. Because the bruises had not yet been detected when Riley was questioned, the police did not ask him to explain the bruises.

I.

Riley was initially convicted of first degree murder. After considering legal memoranda on first degree murder versus second degree murder, the judge reduced the conviction to second degree

- 3 -

murder, based on Rhodes v. Commonwealth, 238 Va. 480, 384 S.E.2d 95 (1989).

On appeal, we view the evidence in the light most favorable to the Commonwealth, granting it all reasonable inferences fairly deducible therefrom. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). The decision of the trial court, sitting without a jury, is afforded the same weight as a jury's verdict and therefore will not be disturbed on appeal unless plainly wrong or without evidence to support it. Pugh v. Commonwealth, 223 Va. 663, 667, 292 S.E.2d 339, 341 (1982).

To sustain a conviction for second degree murder, the Commonwealth must prove an unlawful killing done with malice. Wooden v. Commonwealth, 222 Va. 758, 762, 284 S.E.2d 811, 814 (1981). "'Malice inheres in the doing of a wrongful act intentionally or without just cause or excuse, or as a result of ill will.'" Id. (quoting Dawkins v. Commonwealth, 186 Va. 55, 61, 41 S.E.2d 500, 503 (1947)). Malice may be implied when any purposeful, cruel act is committed by one individual against another. Pugh, 223 Va. 663, 292 S.E.2d at 341.

Although second degree murder requires proof of malicious intent, it does not require proof of specific intent to kill. If it can be reasonably inferred from the evidence that the killer intended to do great bodily harm, then the killer is guilty of murder in the second degree. Rhodes v. Commonwealth, 238 Va. 480, 486, 384 S.E.2d 95, 98 (1989).

Here, considerable evidence exists to prove that Riley

harbored malice when he killed Chamont.  Two expert witnesses testified that Chamont was burned as the result of being placed face down in extremely hot water.  Chamont also had received trauma to his head so severe that the surface of his brain was bruised.  Riley was Chamont's sole caretaker during the period when Chamont sustained these injuries.  Riley acknowledged that he placed Chamont in the water, and there is no evidence that either of Chamont's brothers touched him during the period in question.

The judge inferred that Riley committed the acts that injured Chamont, and the evidence supports this inference to the exclusion of any other reasonable hypothesis.  Intentionally submerging an infant in scalding water, even for a short time, and striking him with force sufficient to injure the brain are willful and cruel acts from which one can reasonably infer an intent to cause great bodily harm or death.  Also, Riley's expressed ill-will toward Chamont because Chamont was not his child shows a potential for malicious behavior toward Chamont.  Riley's son Chris, although he had also "messed himself" and was purportedly placed in the bathtub, received no burns.

Riley maintains that the evidence does not preclude the hypothesis that Chamont was injured accidentally.[1]  In a case based on circumstantial evidence, the circumstances proved must

---

[1]  The Commonwealth contends that Riley has conceded the sufficiency of the evidence for second degree murder.  We find no merit in this contention.

be consistent with guilt and exclude every reasonable hypothesis of innocence.  Cantrell v. Commonwealth, 229 Va. 387, 397, 329 S.E.2d 22, 28 (1985).  However, "the Commonwealth is only required to exclude hypotheses of innocence that flow from the evidence, and not from the imagination of the accused's counsel." Fordham v. Commonwealth, 13 Va. App. 235, 239, 409 S.E.2d 829, 831 (1991).

Here, the hypotheses of accidental injury suggested by the defendant either have no factual basis in the record, are directly contradicted by the medical evidence, or are based on selective use of Riley's contradictory statements to the police.  As to the latter, where the defendant gives contradictory accounts, the trial judge can reject the self-serving statements and conclude that the defendant was lying to conceal his guilt. Price v. Commonwealth, 446 S.E.2d 642, 647, 18 Va. App. 760, 768 (1994); Speight v. Commonwealth, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (en banc).  The trial judge properly rejected the hypotheses of accidental injury.  Moreover, the trial judge's finding that Riley placed Chamont in scalding water and that he did so as a malicious act is amply supported by other evidence in the record.

## II.

The Commonwealth placed the transcript of Riley's police interrogation into evidence.  On defense counsel's motion and over the Commonwealth's objection, the trial judge admitted the videotape of Riley's interrogation into evidence as well.  At the

close of the evidence and during his summation, defense counsel requested that the trial judge view the tape. The trial judge refused, and decided the case immediately.

While defense counsel's requests that the court view the tape were sufficient to preserve his objection, see Code § 8.01-384, we find no reversible error in the trial court's not viewing the videotape because the evidence on the video was merely cumulative of other evidence. The transcript of the interrogation was placed in evidence and the detective testified from the transcript. Riley has not identified a particular statement omitted from the transcript that was relevant to his defense. His primary objection to the court's failure to consider the tape is that the tape showed his highly emotional state during the latter part of the interrogation. However, this point was brought out on cross-examination of the detective, and the transcript itself indicates that Riley broke down during the interview. The transcript contains Riley's statement that he never meant to hurt Chamont, and the detective also testified about Riley's denials. Therefore, the videotape was merely cumulative of other evidence, and the court's failure to view it was not reversible error. See Pace v. Richmond, 231 Va. 216, 227, 343 S.E.2d 59, 65 (1986).

During defense counsel's summation, he stated that the water could have been too hot by accident. The trial judge responded that water at 120 degrees is steaming, to which defense counsel responded that he did not know whether it was or not. The trial

judge stated that he was not supposed to leave his common sense at home, and defense counsel responded "No, Your Honor."

When the trial judge made oral findings of fact, he again stated that water steams at 120 degrees. When the judge finished his findings, defense counsel asked that his exception to the findings be noted, but he made no objection to any particular finding. Defense counsel now argues that the court erred in taking judicial notice of the appearance of water at 120 degrees.

Defense counsel did not object when the court first noted the temperature at which water steams, and indeed seemed to acquiesce in the judge's comment that it was a matter of common sense. Acquiescence does not preserve an objection. See Boblett v. Commonwealth, 10 Va. App. 640, 650-651, 396 S.E.2d 131, 136-137 (1990). Also, defense counsel made only a general objection after the findings of fact. Such objections are not sufficient to satisfy Rule 5A:18.

For these reasons, we affirm the judgment of the circuit court.

Affirmed.