COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Kelsey and Beales

CURTIS TYRELL MONTAGUE

v.     Record No. 1204-11-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE ROBERT J. HUMPHREYS
MARCH 19, 2013

FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
Edward L. Hogshire, Judge

(Michael T. Hemenway, on briefs), for appellant. Appellant
submitting on briefs.

(Kenneth T. Cuccinelli, II, Attorney General; Leah A. Darron, Senior
Assistant Attorney General, on brief), for appellee. Appellee
submitting on brief.

Curtis Tyrell Montague ("Montague") appeals his conviction by a jury of robbery, in

violation of Code § 18.2-58, and felony murder, in violation of Code § 18.2-32, among other

offenses. Montague requested jury instructions on both excusable self-defense, sometimes referred

to as self-defense with fault, and justifiable self-defense, or self-defense without fault. The trial

court granted the instruction on excusable self-defense, but denied the jury instruction on justifiable

self-defense. For purposes of this opinion, the only assignment of error currently before us is that

the trial court erred in denying Montague's jury instruction on justifiable self-defense. For the

following reasons, we affirm the judgment of the trial court.

"Justifiable homicide in self-defense occurs where a person, *without any fault on his part*

*in provoking or bringing on the difficulty*, kills another under reasonable apprehension of death

or great bodily harm to himself." Bailey v. Commonwealth, 200 Va. 92, 96, 104 S.E.2d 28, 31

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

(1958) (emphasis added). "Any form of conduct by the accused from which the fact finder may reasonably infer that the accused contributed to the affray constitutes 'fault.'" Smith v. Commonwealth, 17 Va. App. 68, 71, 435 S.E.2d 414, 416 (1993).

The granting and denying of jury instructions rests in the sound discretion of the trial court. Cooper v. Commonwealth, 277 Va. 377, 381, 673 S.E.2d 185, 187 (2009). An appellate court's responsibility in reviewing jury instructions "'is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Id. (quoting Molina v. Commonwealth, 272 Va. 666, 671, 636 S.E.2d 470, 473 (2006)). "Jury instructions are properly refused if not supported by more than a scintilla of evidence." Rhodes v. Commonwealth, 41 Va. App. 195, 200, 583 S.E.2d 773, 775 (2003). "'The weight of the credible evidence that will amount to more than a mere scintilla . . . is a matter to be resolved on a case-by-case basis' by assessing the evidence in support of a proposition against the 'other credible evidence that negates' it." Woolridge v. Commonwealth, 29 Va. App. 339, 348, 512 S.E.2d 153, 157-58 (1999) (quoting Brandau v. Commonwealth, 16 Va. App. 408, 411-12, 430 S.E.2d 563, 565 (1993)). "In determining whether evidence amounts to more than a scintilla, 'we must look at the evidence in the light most favorable to [the appellant].'" Herbin v. Commonwealth, 28 Va. App. 173, 181, 503 S.E.2d 226, 230 (1998) (quoting Foster v. Commonwealth, 13 Va. App. 380, 383, 412 S.E.2d 198, 200 (1991)).

The evidence established that on April 8, 2008, Candace Williams ("Williams") and Jada Dickerson ("Dickerson") were inside a van designing a plan to rob a local drug dealer, Shawn Luck ("Luck"). Montague was sitting in the back seat of the van. Williams made a phone call to Luck requesting a quarter of crack cocaine, and then the three drove to obtain a loaded .38 caliber revolver from a friend of Williams. When Williams returned to the van with the revolver, Montague took the gun and placed it in his lap.

After the three took property from another drug dealer walking down the street, Williams called Luck again, and they drove to meet him. Luck drove to the agreed upon location with friends. Luck got into the van and pulled out a scale and a quarter ounce of crack cocaine. Montague said, "I wanted a half." Luck went to his car, returned to the van and sat in the back seat, and put the crack cocaine on the scale. At that point, the driver of the van, either Williams or Dickerson, sped off. Montague and Luck then shot each other. Williams and Dickerson disagreed about whether Montague or Luck fired the first shot. However, they both testified that they intended to rob Luck, that Montague pointed the gun at Luck as the van sped off, and that Montague demanded Luck's property.

Later the same day, Montague gave several conflicting accounts of the events to Detectives Lisa Reeves and Ed Prachar. Montague first stated that Luck got in the van because he asked for a ride to the "hood," and while Montague was sitting in the front seat smoking a cigarette Luck shot him in the back for no particular reason. Then Montague said that he was trying to sell Luck a digital scale, and Luck tried to rob him. He also stated that he, Williams, and Dickerson were trying to buy drugs from Luck. Montague admitted to shooting Luck, but he gave three different accounts of the struggle between them. He said when Luck tried to rob him, he reached for another gun that Luck had on him and shot Luck. Montague also stated that he and Luck struggled over one gun that belonged to Luck and he shot Luck with that gun. In yet another account, Montague said he shot Luck with a firearm he knew was under his seat in the van while they struggled over Luck's firearm.

This record does not reveal even a scintilla of evidence that Montague was without any form of fault in contributing to the affray with Luck. Montague willingly participated in the plan to rob Luck by holding the gun obtained for that purpose and luring Luck to the van with a purported drug transaction. Montague told Detective Prachar that he intended to buy drugs from

Luck. Thus, Montague's own statement establishes that he was engaging in criminal activity and thus was certainly at fault in creating the difficulty leading to any necessity to kill Luck. Therefore, Montague's own evidence admitting his culpability and its clear nexus to Luck's death forecloses an instruction on justifiable self-defense and the trial court did not err by refusing it.[1]

Accordingly, we affirm the judgment of the trial court.

<u>Affirmed.</u>

---

[1] Given that the issue has not been briefed and argued on appeal, we decline to hold as broadly as the concurrence proposes, that justifiable self-defense can *never* be asserted by a defendant charged with felony murder.

Kelsey, J., concurring.

Citing the felony-murder statute, Code § 18.2-32, the murder indictment against Montague alleged he "did feloniously kill and murder" the victim during the "commission of robbery or in the attempted commission of robbery." App. at 7. The indictment did not assert premeditation or any malicious intent to kill. The closing arguments, jury instructions, and verdict forms all confirm that the sole theory of murder advanced by the Commonwealth was felony murder — the victim was killed by Montague, and the killing occurred during the commission of a robbery. The jury found Montague guilty of both robbery and felony murder.[2]

At trial, Montague asserted he shot the victim in self-defense. Montague asked for, and received, a jury instruction outlining the principles of excusable self-defense. He also requested, but was refused, an instruction addressing justifiable self-defense. On appeal, Montague claims the trial court erred by refusing to instruct the jury on justifiable self-defense principles. As a matter of law, I believe the trial court committed no error.

### A. GENERAL PRINCIPLES GOVERNING JURY INSTRUCTIONS

In criminal cases, two threshold requirements — one legal, the other factual — must be met before a jury instruction can be offered. First, criminal jury instructions should accurately inform the jury of "the law of the case applicable to the particular facts" relevant to the charge. Johnson v. Commonwealth, 220 Va. 146, 155, 255 S.E.2d 525, 530 (1979). "An instruction which is inappropriate to the offense for which the defendant was indicted is improper and should be refused." 1 Instructions for Virginia and West Virginia § 19, at 56-57 (4th ed. 1998) (citations omitted). Second, the proponent of the instruction must provide a *prima facie* factual showing, usually described as "more than a scintilla of evidence," Avent v. Commonwealth, 279

---

[2] The jury found Montague guilty of two counts of robbery, in violation of Code § 18.2-58, four counts of use of a firearm in the commission of a felony, in violation of Code §18.2-53.1, and abduction, in violation of Code § 18.2-47.

Va. 175, 202, 688 S.E.2d 244, 259 (2010) (citation omitted), sufficient to permit a rational jury to find in favor of the instruction's proponent on the issue addressed by the instruction.

Both requirements must be met before a criminal defendant has a right to any particular jury instruction. In this case, however, I see no need to address the second requirement (whether a sufficient factual basis for the instruction can be teased out of the record) because the first requirement (whether the instruction is legally applicable) cannot be met as a matter of law.[3] I come to this conclusion based upon the elements of a felony-murder charge and the incompatibility of justifiable self-defense in this context.

### B. THE FELONY-MURDER DOCTRINE

As early as 1776, Virginia recognized the "common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly." Code § 1-200 (recodifying former Code § 1-10); see Satterwhite v. Commonwealth, 56 Va. App. 557, 560, 695 S.E.2d 555, 556-57 (2010). To be sure, "[t]his principle is older than the Commonwealth itself." Taylor v. Commonwealth, 58 Va. App. 435, 443-44, 710 S.E.2d 518, 522 (2011) (citing W. Hamilton Bryson, Virginia Civil Procedure 47 (3d ed. 1997), tracing Virginia's adoption of the common law to the royal instructions to the Virginia Company, which planted the colony at Jamestown).

---

[3] On appeal, the Commonwealth argues Montague can meet neither the factual nor the legal thresholds for the justifiable self-defense instruction. Though emphasizing in its brief the former point, the Commonwealth argues on the latter: "The purpose of the felony murder rule is to deter inherently dangerous felonies by holding felons responsible for the consequences of the felony, whether intended or not. King v. Commonwealth, 6 Va. App. 351, 354, 368 S.E.2d 704, 705 (1988). To allow self-defense, perfect or imperfect, to apply to felony murder would defeat that purpose." Appellee's Br. at 12.

Though subject to considerable scholarly debate, the felony-murder doctrine developed largely from the restatements of the common law by Lord Edward Coke[4] and Sir William Blackstone.[5] Virginia courts carried these common law principles into our jurisprudence. See, e.g, Commonwealth v. Jones, 28 Va. (1 Leigh) 598, 611 (1829); accord Robertson v. Commonwealth, 1 Va. Dec. 851, 855, 20 S.E. 362, 364 (1894); Howell v. Commonwealth, 67 Va. (26 Gratt.) 995, 997 (1875); Whiteford v. Commonwealth, 27 Va. (6 Rand.) 721, 724 (1828).

Since 1796, Virginia statutes have recognized the common law doctrine of felony murder. See 1796 Va. Acts ch. 200 (first felony-murder statute). Code § 18.2-32 identifies the predicate felonies for first-degree murder, but does not otherwise codify the common law elements of the doctrine. Defining second-degree felony murder, Code § 18.2-33 codifies the common law rule that a killing may constitute felony murder if done "accidentally" or "contrary to the intention of the parties," so long as it takes place "while in the prosecution" of a felony not included in Code § 18.2-32. "This statute codifies ancient common law." Heacock v. Commonwealth, 228 Va. 397, 403, 323 S.E.2d 90, 93 (1984); accord Haskell v. Commonwealth, 218 Va. 1033, 1035 n.1, 243 S.E.2d 477, 478 n.1 (1978) (noting the statute is of "ancient origin").

The common law requires neither "premeditation" nor "intent to kill" for a conviction for felony murder. Wooden v. Commonwealth, 222 Va. 758, 762, 284 S.E.2d 811, 814 (1981); Jones, 28 Va. (1 Leigh) at 611 (holding the prosecution need not prove "the death was the

---

[4] See 3 Edward Coke, Institutes of the Laws of England, ch. 8, at 56 (4th ed. 1669) (defining "homicide, that is neither forethought, nor voluntary," but that occurs during the commission of an "unlawful" act, as "murder" (modern spelling used)).

[5] "[I]f a man be doing any thing *unlawful,* and a consequence ensues which he did not foresee or intend, as the death of a man, or the like, his want of foresight shall be no excuse; for, being guilty of one offence in doing antecedently what is in itself unlawful, he is criminally guilty of whatever consequence may follow the first misbehaviour." 4 William Blackstone, Commentaries *26-27. "And if one intends to do another felony, and undesignedly kills a man, this is also murder." Id. at *200-01 (citing 1 Matthew Hale, Pleas of the Crown 465).

ultimate result, which the will, deliberation and premeditation of the party accused sought"); accord Howell, 67 Va. (26 Gratt.) at 997 (explaining the "intention to kill" is "no part" of the definition of felony murder); Whiteford, 27 Va. (6 Rand.) at 725 (stating in *dicta* that felony murder occurs without "the ingredient of a willful killing").

Though the killer must have acted with malice, "the malice intrinsic in the commission of one of the predicate felonies 'provides the malice prerequisite to a finding that the homicide was murder.'" Heacock, 228 Va. at 403, 323 S.E.2d at 93 (quoting Wooden, 222 Va. at 762, 284 S.E.2d at 814). By "imputing malice to the killing," Turner v. Commonwealth, 282 Va. 227, 250, 717 S.E.2d 111, 123 (2011) (quoting Commonwealth v. Montague, 260 Va. 697, 700, 536 S.E.2d 910, 912 (2000)), the doctrine of felony murder meets the common law requirement of malice while decoupling it from the specific act of killing. See generally 2 Charles E. Torcia, Wharton's Criminal Law § 147, at 296-97 (15th ed. 1994).

The legal imputation of malice, however, occurs only when the facts satisfy the "*res gestae* rule," which requires the killing to be "so closely related to the felony in time, place, and causal connection as to make it a part of the same criminal enterprise." Montague, 260 Va. at 701, 536 S.E.2d at 913 (quoting Haskell, 218 Va. at 1044, 243 S.E.2d at 483); see also Turner, 282 Va. at 250, 717 S.E.2d at 123. If the facts of the case satisfy the *res gestae* rule, the malice intrinsic to the underlying felony serves as a sufficient *mens rea* substitute for the lack of a particular intent to kill or the absence of malice specific to the homicidal act. See generally Ronald J. Bacigal, Criminal Offenses and Defenses 344-46 (2012-13).

C.  JUSTIFIABLE SELF-DEFENSE AND FELONY MURDER

The underlying logic of a felony-murder charge reveals the manifest illogic of responding to such a charge with a claim of *justifiable* self-defense.

"Killing in self-defense may be either justifiable or excusable homicide." Avent, 279 Va. at 199, 688 S.E.2d at 257 (quoting Yarborough v. Commonwealth, 217 Va. 971, 975, 234 S.E.2d 286, 290 (1977)). When successful, a claim of self-defense renders an accused "innocent and guiltless" of any form of criminal homicide. Bailey v. Commonwealth, 200 Va. 92, 96, 104 S.E.2d 28, 31 (1958). In Virginia, self-defense is not merely a mitigating factor lowering the grade of homicide — it is a complete exoneration.

The two variations of self-defense, justifiable and excusable, turn on a single variable: the killer's fault in bringing about the situation during which the killing occurs. In cases of justifiable self-defense, "the slayer is in *no kind of fault whatsoever, not even in the minutest degree*; and is therefore to be totally acquitted and discharged, with commendation rather than blame." Dodson v. Commonwealth, 159 Va. 976, 981, 167 S.E. 260, 261 (1933) (emphasis added and citation omitted). "If a defendant is *even slightly at fault*," on the other hand, "the killing is not justifiable homicide." Avent, 279 Va. at 203, 688 S.E.2d at 259 (emphasis added) (quoting Perricllia v. Commonwealth, 229 Va. 85, 94, 326 S.E.2d 679, 685 (1985)). "Excusable homicide in self-defense occurs where the accused [is] in *some fault* in the *first instance* in provoking or bringing on the difficulty" leading up to the killing. Id. at 200, 688 S.E.2d at 257 (emphasis added and citation omitted).

It necessarily follows that a claim of *justifiable* self-defense can never be asserted against a charge of felony murder. No defendant can be convicted of felony murder unless he has committed a felony — which, by definition, involves legal fault. And, even then, the killing must take place within the *res gestae* of the felony so as "to make it a part of the same criminal enterprise." Montague, 260 Va. at 701, 536 S.E.2d at 913 (quoting Haskell, 218 Va. at 1043-44, 243 S.E.2d at 483). The necessary predicate for justifiable self-defense — the absence of any "fault whatsoever, not even in the minutest degree," Dodson, 159 Va. at 981, 167 S.E. at 261

(citation omitted) — will never exist in a case where the accused is charged with, and convicted of, felony murder. Put another way, justifiable self-defense is legally irrelevant to a felony-murder charge. If a defendant is guilty of felony murder, he can never be wholly without fault. And, if he is innocent of felony murder, either because he committed no felony at all or because the killing was outside the *res gestae* of the alleged felony, it matters not that he can *also* show the killing was justified.

Courts applying common law principles uniformly support this view. As one court put it, "when one kills in the commission of a felony, that person cannot claim self-defense, for 'this would be fundamentally inconsistent with the very purpose of the felony murder [statute].'" State v. Amado, 756 A.2d 274, 284 (Conn. 2000) (citation omitted); see also Sutton v. State, 776 A.2d 47, 71 (Md. Ct. Spec. App. 2001) (recognizing that "self-defense is not a defense to felony murder" and noting that it "borders on the absurd" to apply the concept in a robbery felony-murder case). A claim of self-defense "may not be invoked by a defendant who, through his own wrongful conduct (*e.g.*, the initiation of a physical attack or the commission of a felony), has created circumstances under which his adversary's attack or pursuit is legally justified." People v. Valencia, 180 P.3d 351, 370 (Cal. 2008). "Indeed, nearly every jurisdiction that has opined on the matter makes a justification [self] defense unavailable to those who initiated the underlying felonies." People v. Walker, 78 A.D.3d 63, 68-69 (N.Y. App. Div. 2010) (citing cases).[6]

---

[6] See also United States v. Thomas, 34 F.3d 44, 48 (2d Cir. 1994) (holding "the defendants had no entitlement to any self-defense" instruction on the felony-murder charge); State v. Joyce, 696 A.2d 993, 1000 (Conn. App. Ct. 1997) (upholding jury instruction that self-defense did not apply if jury "was convinced that the defendant was in the process of robbing the store and that the defendant had killed the victim"); Freeman v. State, 761 So. 2d 1055, 1064 (Fla. 2000) (holding "self-defense is not legally available to a person who [i]s attempting to commit, committing, or escaping from the commission of a forcible felony" (citation and internal quotation marks omitted)); People v. Moore, 447 N.E.2d 1327, 1330 (Ill. 1983) (noting that "self-defense cannot be used as a defense to a charge of felony murder"); State v. Phillips, 287

Some courts conclude that neither form of self-defense, justifiable or excusable, may be raised as a matter of law to defend against a charge of felony murder. It is unnecessary, for my purposes, to go so far in this case. The trial court granted Montague's instruction on excusable self-defense. Whether the trial court erred in doing so is not before us. I thus offer no opinion on whether the trial court erred in granting Montague's request for an excusable self-defense instruction. In sum; because *justifiable* self-defense cannot be asserted as a basis for exoneration of a felony-murder charge, I would hold the trial court correctly refused the instruction.

---

P.3d 245, 255 (Kan. 2012) (recognizing that "self-defense is not available to a person who [i]s attempting to commit, committing, or escaping from the commission of a forcible felony" (citation and internal quotation marks omitted)); State v. Chism, 759 P.2d 105, 110 (Kan. 1988) ("Self-defense or accident are not defenses to felony murder."); Commonwealth v. Smith, 946 N.E.2d 95, 104 (Mass. 2011) ("Self-defense is inapplicable to a charge of felony-murder . . . ."); State v. Newman, 605 S.W.2d 781, 786 (Mo. 1980) (recognizing that "self-defense is not a defense to homicide committed in the perpetration of arson, rape, burglary, robbery or other felony"); State v. Richardson, 462 S.E.2d 492, 499 (N.C. 1995) (holding "[s]elf-defense, perfect or imperfect, is not a defense to first-degree murder under the felony murder theory"); Smith v. State, 354 S.W.2d 450, 452 (Tenn. 1961) (stating self-defense is inapplicable to "the person who kills another while engaged in committing a felony"); State v. Soules, 286 P.3d 25, 27 (Utah Ct. App. 2012) (noting "self-defense is not available to a charge of felony murder"); State v. McGee, 655 A.2d 729, 733 (Vt. 1995) ("If defendant was acting while in the course of an attempted felony, he was not entitled to the benefit of self-defense because his own conduct brought about the difficulty with [the victim].").

- 11 -