**Richmond**

STEPHEN BLAKE DAVIS

v.

COMMONWEALTH OF VIRGINIA

No. 1522-89-2

Decided April 30, 1991

COUNSEL

Wm. J. Doran, III, for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—In a jury trial held on March 1, 1988, Steven Blake Davis, appellant, was convicted of felony homicide pursuant to Code § 18.2-33 and sentenced to eight years imprisonment. On appeal, Davis, who is an habitual offender, contends the accidental killing that occurred while he was driving a motor vehicle is not felony murder within the purview of Code § 18.2-33 because, other than mere contiguity in point of time, there was no connection between the felonious act of driving and the death of the

victim.

On November 6, 1987, two Richmond City police officers were on routine patrol when they received a radio information to be on the lookout for a red Pontiac Fiero suspected of hit and run. The two officers spotted the vehicle as it entered a street going the wrong way. The officers activated the blue lights on their police vehicle and pulled in behind the Fiero, which then stopped. As the officers approached the Fiero on foot, it sped off the wrong way up Eighth Street, through numerous side streets and across the King Bridge. The driver of the Fiero drove through numerous red lights, stop and yield signs, and his vehicle reached speeds between forty and seventy miles per hour.

Meanwhile, the officers returned to their vehicle and pursued the Fiero for approximately seven minutes until, while in the wrong lane of traffic, the Fiero crashed head-on into another police car. An officer went to the passenger side of the Fiero and found an unconscious passenger, who subsequently died at the scene. Davis was found in the driver's seat.

At trial, Davis was shown to have been declared an habitual offender on February 8, 1983. Davis testified he was driving the Fiero at the time of the fatal accident. However, Davis claimed the passenger was driving at the time of the hit and run. He further testified that both he and the passenger were drunk at the time of the hit and run, and that the reason he refused to stop the vehicle during the chase was because he was an habitual offender.

 Second degree felony homicide is defined by Code § 18.2-33 as the "killing of one accidentally, contrary to the intention of the parties, while in the prosecution of some felonious act other than those specified in §§ 18.2-31 and 18.2-32." This statute and its companion statute, Code § 18.2-32, codify the common law doctrine of felony murder, the purpose of which is to deter inherently dangerous felonies by holding the felons responsible for any intended or unintended consequences of the felony. *King v. Commonwealth*, 6 Va. App. 351, 354, 368 S.E.2d 704, 705-06 (1988); *see Heacock v. Commonwealth*, 228 Va. 397, 403, 323 S.E.2d 90, 93 (1984). However, "[i]n order for [an] incidental accidental killing to be murder, the homicide must be criminal in nature and must contain the elements or attributes of criminal homicide cognizable at common law." *King*, 6 Va. App. at 355, 368 S.E.2d at

706. Thus, to limit the potentially harsh results of the felony-murder doctrine, Virginia courts require the accidental death to be causally related to the commission of the felony. *Id.*

██ "In Virginia, it is clear when the homicide is within the *res gestae* of the initial felony and emanates therefrom, it is committed in the perpetration of that felony" and a causal connection exists. *King*, 6 Va. App. at 355-56, 368 S.E.2d at 706; *accord Haskell v. Commonwealth*, 218 Va. 1033, 1041, 243 S.E.2d 477, 482 (1978). "[T]he felony-murder statute applies where the killing is so closely related to the felony in time, place, and causal connection as to make it a part of the same criminal enterprise." *Haskell*, 218 Va. at 1044, 243 S.E.2d at 483; *accord King*, 6 Va. App. at 355-56, 368 S.E.2d at 706. If the accidental killing is related as such, then malice, but not the act of killing itself, will be imputed to the felon for the killing, thereby converting the homicide to murder. *See Spain v. Commonwealth*, 7 Va. App. 385, 394, 373 S.E.2d 728, 733 (1988); *King*, 6 Va. App. at 356, 368 S.E.2d at 707.

██ Generally, in determining whether a felony murder has been committed, the critical factor is the existence of a causal connection between the felony and the accidental killing. A felon is not necessarily subject to criminal liability under the felony murder rule for every death which occurs while a felony is being committed. Otherwise, the felony-murder doctrine would make a felon absolutely liable for the accidental death of another person even though that death was a mere coincidence and not a consequence of the felony. *King*, 6 Va. App. at 355-56, 368 S.E.2d at 706-07. Therefore, a "mere nexus" between the felony and the accidental death will not invoke the felony-murder doctrine. Rather, "[t]he act or acts causing death must have been *directly calculated* to further the felony or *necessitated* by the commission of the felony." *Id.* at 359, 368 S.E.2d at 708-09 (emphasis added).

Davis directs us to *Doane v. Commonwealth*, 218 Va. 500, 237 S.E.2d 797 (1977), as support for his argument that the accidental killing in the present case does not fall within the felony-murder doctrine. However, we believe *Doane* is inapposite to the present case. There, the defendant stole a car in Richmond. The following day, in Smyth County, approximately 280 miles from Richmond, the defendant failed to stop at a stop sign and killed a person while driving the stolen car. After denying the Common-

wealth the benefit of the legal fiction that larceny is a continuing theft, the Virginia Supreme Court held the felony-murder doctrine was inapplicable since neither a showing of causal relationship nor a showing of nexus between the larceny and the accidental killing existed. 218 Va. at 502, 237 S.E.2d at 798. The Court did not resolve the issue of whether a showing of causal connection or a showing of a mere nexus will suffice to invoke the felony-murder doctrine; likewise, the Court did not address the issue of *res gestae* later examined in *Haskell.*

In *King v. Commonwealth*, 6 Va. App. 351, 368 S.E.2d 704 (1988), we rejected the contention that a showing of "mere nexus" will suffice and held that a causal connection is required to invoke the felony-murder doctrine. In *King*, the defendant, accompanied by another man, piloted an airplane full of marijuana into Virginia. Due to heavy fog, the defendant's companion took control of the airplane while the defendant tried to navigate. However, the airplane flew too low and crashed into a mountain, killing the companion. The defendant was convicted of felony murder based on the felony of possession of marijuana with intent to distribute. While we recognized that "but for" the felony, the defendant probably would not have been in the plane, we also noted the crash still would have occurred even if the defendant had been transporting legal cargo. "The accident stemmed not from the possession or distribution of drugs, but from fog, low cloud cover, pilot error, and inexperience." 6 Va. App. at 358, 368 S.E.2d at 708. Consequently, we reversed the conviction, holding that the death was not caused by an act of the felons in furtherance of or necessitated by the felony. *Id.* at 359, 368 S.E.2d at 709.

In *Haskell v. Commonwealth*, 218 Va. 1033, 243 S.E.2d 477 (1978), the Supreme Court applied the *res gestae* doctrine to uphold a felony-murder conviction. In *Haskell*, four defendants picked up a drunken hitchhiker, drove to a quiet street, took him from the car, physically beat him and attempted to rob him but could not find his wallet or any money. As they returned to their car and prepared to leave the man, he came after them and tried to enter their car in an effort to grab one of them. One of the defendants then shot and killed the victim. The Court found there was sufficient evidence to support the trial court's finding that the killing was committed within the *res gestae* of the attempted robbery. The Court found the felony-murder statute applied since the

killing was so closely related in time, place, and causal connection as to make it a part of the attempted robbery. 218 Va. at 1044, 243 S.E.2d at 483.

The Court reaffirmed *Haskell* in *Heacock v. Commonwealth*, 228 Va. 397, 323 S.E.2d 90 (1984), where it again utilized the *res gestae* approach to determine whether the felony-murder doctrine was applicable. In *Heacock*, the defendant supplied a quantity of high quality cocaine at a party he was attending. The defendant later helped prepare the cocaine to be taken intravenously by others at the party. A woman at the party overdosed and died after taking an injection of the defendant's cocaine. Based on the distribution of cocaine felony, the defendant was convicted of felony murder despite the fact that no evidence indicated he actually injected the victim with the cocaine. The Court upheld the conviction, without making a determination of whether a causal connection or mere nexus existed, based on the finding that the homicide was within the *res gestae* of the distribution of cocaine felony. The Court found the distribution of cocaine felony and the homicide to be part of one continuous transaction "closely related in point of time, place and causal connection." 228 Va. at 405, 323 S.E.2d at 94-95 (quoting *Haskell*, 218 Va. at 1041, 243 S.E.2d at 482).

Here, we do not have a case where an habitual offender was driving carefully and an accidental death occurred. Instead, this case involves an habitual offender who accidentally killed a person while driving in a reckless manner in order to avoid being caught committing his felonious act of driving after being declared an habitual offender. The act of driving when forbidden to do so is not inherently dangerous. Rather, it is the act of driving while intoxicated or recklessly that is inherently dangerous. Consequently, a death caused by an habitual offender who is operating a vehicle is not necessarily necessitated by the commission of the felony of driving when declared an habitual offender.

Unlike *King*, where the plane was not flying low to avoid detection but rather in an effort to safely navigate through the heavy fog, Davis was driving recklessly to avoid detection and, thus, the accident was "a consequence or action which was directly intended to further the felony." *King*, 6 Va. App. at 358, 368 S.E.2d at 708. Based on these facts, we do not have to determine whether there exists a causal connection between the homicide and the felony or a mere nexus. Admittedly, driving recklessly is

not necessitated by the felonious act of driving after having been declared an habitual offender. Here, however, the act of driving *recklessly* was directly calculated to further the felonious act of driving after having been declared an habitual offender. This conclusion is evidenced by Davis' admission that the reason he was driving in such a manner was to elude the police and avoid being caught performing the felonious act. Based on the holdings in *Heacock* and *Haskell*, we find the homicide caused by Davis' reckless driving was within the *res gestae* of his felony and emanated from it. The homicide was committed in the perpetration of Davis' felony and, therefore, is subject to the felony-murder doctrine.

For the foregoing reasons, we affirm Davis' felony-murder conviction.

*Affirmed.*

Benton, J., and Cole, J., concurred.