COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Bray and Annunziata
Argued at Alexandria, Virginia


JAMES EDWARD GRIFFIN, JR.
                                          OPINION BY
v.    Record No. 2131-99-4    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                       SEPTEMBER 12, 2000
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                    LeRoy F. Millette, Jr., Judge

            Todd S. Baldwin (Baldwin, Molina, Escoto &
            Machado, P.C., on briefs), for appellant.

            Virginia B. Theisen, Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


     James Edward Griffin, Jr. (appellant) was convicted in a

jury trial of felony murder, in violation of Code § 18.2-33, use

of a firearm in the commission of felony murder, in violation of

Code § 18.2-53.1, and possession of a firearm by a convicted

felon, in violation of Code § 18.2-308.2.  On appeal, he argues

that: (1) the evidence was insufficient to establish that the

accidental killing occurred within the res gestae of the

predicate felony, possession of a firearm by a convicted felon;

and (2) the use of his juvenile adjudications for purposes of

establishing his "felon" status constituted an ex post facto

application of the law.  For the following reasons, we reverse

in part and affirm in part.

When the sufficiency of the evidence is challenged on appeal, we determine whether the evidence, viewed in the light most favorable to the prevailing party, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense. See Moore v. Commonwealth, 254 Va. 184, 186, 491 S.E.2d 739, 740 (1997); Derr v. Commonwealth, 242 Va. 413, 424, 410 S.E.2d 662, 668 (1991). "In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Watkins v. Commonwealth, 26 Va. App. 335, 349, 494 S.E.2d 859, 866 (1998). The jury's verdict will not be set aside unless it is plainly wrong or without evidence to support it. See Code § 8.01-680; Canipe v. Commonwealth, 25 Va. App. 629, 644, 491 S.E.2d 747, 754 (1997).

The evidence established that on January 21, 1994, appellant, who was a juvenile at the time, pled guilty in the Juvenile and Domestic Relations Court of Prince William County to breaking and entering and grand larceny. These adjudications were later used as the basis for his "felon" status in the instant offenses.

In October 1998, appellant was sharing an apartment in Prince William County with his best friend, Shaquwn Thomas

(Thomas).  The two had known each other for approximately three and one-half years and considered themselves "like brothers." On October 16, 1998, appellant and Thomas returned from their jobs and were preparing to go out for the evening.  Appellant left the apartment to visit his two children, who lived in a nearby apartment building.

When he returned to his apartment, appellant saw a gun, which he and Thomas had previously purchased, lying on Thomas's bed.  Appellant picked up the gun and began dancing to music. The gun discharged and a bullet hit Thomas in the chest from a distance of three feet or less.  Appellant testified as follows:

> All I know is when I picked the gun up,
> . . . and I don't know, I didn't notice if
> the hammer was back . . . but all I remember
> was I seen [sic] sparks and I heard a pop go
> off and when I looked down the gun was
> pointing towards where I know where I was
> just talking to [Thomas].

Appellant panicked, ran out of the apartment to a nearby wooded area, and buried the gun.  Jan Quigley, who lived near appellant's apartment, saw an individual run down the steps to the edge of the wooded area, squat down for three to five seconds, and then run back in the opposite direction.  After disposing of the gun, appellant returned to the apartment and called 911.

Appellant told the 911 operator that a masked assailant had broken into the apartment, entered Thomas's bedroom, and shot Thomas.  Appellant then called Thomas's father and told him to

-

come to the apartment because someone had shot Thomas. When the police arrived at the scene, appellant told two different officers that he was in the bathroom when he heard the gunshot. A police dog found the weapon in the wooded area, and a gunshot residue test performed at the scene revealed the presence of primer residue on appellant's hands.

At police headquarters, after learning that Thomas had died, appellant confessed to Detective Pete Barlow (Barlow) that the shooting was an accident. According to Barlow,

> [appellant] started crying and said, "I
> didn't mean to shoot him." . . .
> [Appellant] picked the gun up off the bed,
> was talking to [Thomas] and the gun just
> went off. . . . He said he doesn't remember
> if he pulled the trigger. He said he
> remembered that his finger was inside the
> trigger guard and on the trigger, but --

Appellant explained to Barlow that he knew they were not "supposed to have the gun in the first place" and that he held the gun for approximately one minute before it discharged.

Appellant was charged with first-degree murder, felony murder, use of a firearm in the commission of a felony, and possession of a firearm by a convicted felon. At trial, Ronald Kovacs (Kovacs), a jailhouse informant, testified that appellant admitted to him in jail that appellant shot Thomas during an argument over a girl. However, two other jailhouse informants testified that Kovacs admitted to fabricating his testimony

-

against appellant in an effort to get a reduced sentence in his pending cases.

In his defense, appellant testified that the shooting was an accident and that he had never met Kovacs while incarcerated. He admitted that he was "kind of feeling [the beat of the music]" at the time the gun discharged. Appellant explained that he had lied to the authorities because he "was in a state of panic" and his "mind was running like . . . a hundred thousand miles per hour."

After deliberations, the jury acquitted appellant of first-degree murder, including the lesser-included offenses of second-degree murder and involuntary manslaughter. However, the jury found appellant guilty of the remaining three charges, felony murder, use of a firearm in the commission of a felony, and possession of a firearm by a convicted felon.

## II. FELONY MURDER

In this appeal, we determine whether the evidence was sufficient to convict appellant of felony murder, in violation of Code § 18.2-33. That section provides:

> The killing of one accidentally, contrary to the intentions of the parties, <u>while in the prosecution of some felonious act</u> other than those specified in §§ 18.2-31 and 18.2-32, is murder of the second degree and is punishable by confinement in a state correctional facility for not less than five years nor more than forty years.

-

Code § 18.2-33 (emphasis added).  This statute and its companion, Code § 18.2-32, defining first degree felony murder,[1] codify the common law doctrine of felony murder.  See Heacock v. Commonwealth, 228 Va. 397, 403, 323 S.E.2d 90, 93 (1984).

The doctrine of felony murder was "developed to elevate to murder a homicide committed during the course of a felony by imputing malice to the killing."  King v. Commonwealth, 6 Va. App. 351, 354, 368 S.E.2d 704, 705 (1988).  Thus, "[w]here a person engages in felonious activity and homicide results, the malice inherent in the original felony provides the malice necessary to a finding that the homicide was murder."  Hickman v. Commonwealth, 11 Va. App. 369, 371, 398 S.E.2d 698, 699 (1990).

In Doane v. Commonwealth, 218 Va. 500, 237 S.E.2d 797 (1977), the Virginia Supreme Court reversed a defendant's felony-murder conviction because the Commonwealth failed to prove a "causal relationship" between the predicate felony of grand larceny one day and an accidental killing while driving

---

[1] Code § 18.2-32 provides, in part:

> Murder, other than capital murder, by
> poison, lying in wait, imprisonment,
> starving, or by any willful, deliberate, and
> premeditated killing, or in the commission
> of, or attempt to commit, arson, rape,
> forcible sodomy, inanimate or animate object
> sexual penetration, robbery, burglary or
> abduction, except as provided in § 18.2-31,
> is murder of the first degree . . . .

-

the stolen car the following day.  See id. at 502-03, 237 S.E.2d

at 798.  Although the Court recognized that the crime of larceny

is a continuing offense, this "fiction of the common law" would

not "satisfy the requirements of Code § 18.2-33 that the

accidental killing occur[red] while the defendant [was] in the

prosecution of a felonious act."  Id. at 502, 237 S.E.2d at 798.

> Once the Commonwealth is stripped of
> the benefit of the fiction, there is neither
> a showing of causal relationship nor a
> showing of nexus between the larceny, which
> was complete with the defendant's
> asportation of the car in Richmond, and the
> accidental killing of Mrs. Terry in Smyth
> County the following day.  Whether that
> showing must be one of causal relationship,
> or whether a showing of mere nexus will
> suffice, is a question which we defer to
> another day.[2]

Id. at 502-03, 237 S.E.2d at 798-99.

The following year, in Haskell v. Commonwealth, 218 Va.

1033, 243 S.E.2d 477 (1978), the Court adopted the res gestae

doctrine as applied to felony murder and enunciated the

following rule: "[T]he felony-murder statute applies where the

killing is so closely related to the felony in time, place, and

causal connection as to make it a part of the same criminal

enterprise."  Id. at 1044, 243 S.E.2d at 483.  See also Wooden

v. Commonwealth, 222 Va. 758, 762, 284 S.E.2d 811, 814 (1981)

---

[2] In Heacock, 228 Va. 397, 323 S.E.2d 90, the Court again declined to elaborate on the degree of causal connection required under the statute.  See id. at 404, 323 S.E.2d at 94 ("We do not decide that question here, because it is foreclosed by evidence which we consider conclusive.").

-

("[A]ll of the criminal participants in the initial felony may be found guilty of the felony-murder of the victim so long as the homicide was within the res gestae of the initial felony.").

Thus, the rule is well settled that "[n]either premeditation nor an intent to kill is an element of felony-murder, but malice is." Wooden, 222 Va. at 762, 284 S.E.2d at 814; see also Spain v. Commonwealth, 7 Va. App. 385, 396, 373 S.E.2d 728, 733 (1988). "[W]hen the homicide is within the res gestae of the initial felony and emanates therefrom, it is committed in the perpetration of that felony." King, 6 Va. App. at 355, 368 S.E.2d at 706; see also Heacock, 228 Va. at 405, 323 S.E.2d at 94; Haskell, 218 Va. at 1041, 243 S.E.2d at 482.

In the instant case, appellant contends that the accidental killing of Thomas was not within the res gestae of the underlying felony because no causal connection existed between the two events. Specifically, he argues that the accidental shooting was not "a consequence or action which was directly intended to further the [predicate] felony." King, 6 Va. App. at 358, 368 S.E.2d at 708. Thus, appellant concludes, the lack of any nexus between the "status felony" of possession of a firearm by a convicted felon and the accidental shooting requires reversal of his conviction.

No reported Virginia cases have addressed the felony-murder doctrine when the predicate offense was possession of a firearm

-

by a convicted felon.  However, our decisions in King, 6 Va. App. 351, 368 S.E.2d 704, and Davis v. Commonwealth, 12 Va. App. 408, 404 S.E.2d 377 (1991), are instructive.  In King, we reversed a conviction for felony murder "because the death was not caused by an act of the felons in furtherance of the felony."  6 Va. App. at 353, 368 S.E.2d at 705.  There, the defendant was a pilot of an airplane carrying marijuana into Virginia.  Due to heavy fog, the defendant's companion took control of the airplane while the defendant attempted to navigate.  However, the airplane crashed into a mountain, killing the companion.  The defendant was convicted of felony murder based upon the felony of possession of marijuana with intent to distribute.  See id. at 353-54, 368 S.E.2d at 705.

In King, we held that the accidental death did not stem from the possession or distribution of drugs, but from "fog, low cloud cover, pilot error, and inexperience," id. at 358, 368 S.E.2d at 708, which was insufficient to sustain the conviction.

> [I]f the accidental death, in the absence of
> imputed malice, would not have been a
> criminal homicide, then the statute does not
> elevate it to second degree murder and
> impute culpability for the death to a
> cofelon [sic].  Moreover, . . . a death
> which results not from actions of the felons
> nor from acts directly calculated to further
> the felony or necessitated by the felony,
> but from circumstances coincident to the
> felony, is not a death for which a
> felony-murder conviction will obtain.  To
> punish as a murderer, every man who, while
> committing a heinous offense, causes death
> by pure misadventure, is a course which

-

> evidently adds nothing to the security of
> human life.

Id. at 359, 368 S.E.2d at 708 (internal quotations and citations omitted). Because the death was not caused by an act of the defendant in furtherance of or necessitated by the felony, we reversed his conviction for felony murder. See id.

More recently, we affirmed a conviction for felony murder in Davis, 12 Va. App. 408, 404 S.E.2d 377, where the defendant, who had been declared an habitual offender, caused an accidental death. The accident occurred when the driver was attempting to elude police in order to "avoid being caught committing the felonious act of driving after being declared an habitual offender." Id. at 413, 404 S.E.2d at 380. In applying the res gestae theory, we held that because the habitual offender was committing the offense and attempting to escape detection when the accident occurred, the accident was "'a consequence or action which was directly intended to further the felony.'" Id. (quoting King, 6 Va. App. at 358, 368 S.E.2d at 708).

Because "the act of driving recklessly was directly calculated to further the felonious act of driving after having been declared an habitual offender," id. at 414, 404 S.E.2d at 380 (emphasis in original), we concluded in Davis that the homicide caused by the defendant "was within the res gestae of his felony and emanated from it." Id.

> Here, we do not have a case where an
> habitual offender was driving carefully and

-

> an accidental death occurred.  Instead, this
> case involves an habitual offender who
> accidentally killed a person while driving
> in a reckless manner in order to avoid being
> caught committing his felonious act of
> driving after being declared an habitual
> offender.  The act of driving when forbidden
> to do so is not inherently dangerous.
> Rather, it is the act of driving while
> intoxicated or recklessly that is inherently
> dangerous.  Consequently, a death caused by
> an habitual offender who is operating a
> vehicle is not necessarily necessitated by
> the commission of the felony of driving when
> declared an habitual offender.

Id. at 413, 404 S.E.2d at 380.

Although we found a sufficient causal relationship between the felony and the accidental killing in Davis, such circumstances are undeniably absent in the instant case.  The evidence, as found by the jury, failed to prove murder or manslaughter.  In short, the jury found that the death of Thomas was accidental and but for the prior felony conviction he would have been held blameless.

This case is analogous to our decision in King.  No evidence produced at trial established a causal connection between the underlying felony and the accidental killing.  Both the felony-murder statute and our case law require that the accidental killing occur "while in the prosecution of some felonious act," Code § 18.2-33 (emphasis added), or "in furtherance of the felony."  King, 6 Va. App. at 353, 368 S.E.2d at 705 (emphasis added).  It is not enough that the killing occur "during" the felony or "while" it is being committed;

-

something more is required than mere coincidence of time and place. See Haskell, 218 Va. at 1041, 243 S.E.2d at 482 ("[W]hen the homicide is within the res gestae of the initial felony and is an emanation thereof, it is committed in the perpetration of that felony."). Discussing the res gestae principle, Professor LaFave has explained:

> The homicide must be within the res gestae of the [predicate felony]; this means that the homicide and the [underlying felony] must be "closely connected in point of time, place and causal relation."
>
>      *       *       *       *       *       *       *
>
> In short, whether there is a sufficient causal connection between the felony and the homicide depends on whether the defendant's felony dictated his conduct which led to the homicide. If it did, and the matters of time and place are not too remote, the homicide may be "in the commission" of the felony; but if it did not, it may not be.

Wayne R. LaFave, Criminal Law § 7.5, at 634-36 (1998) (emphasis added). Thus, "the collateral crime and the homicide must be integrated and related in a causal way. . . . The death must be caused by the felonious act. The death need not be in furtherance of the felony, but the act that caused the death should be in furtherance of the felony." 40 Am. Jur. 2d Homicide § 70 (1999) (emphasis added).

We hold that Code § 18.2-33 applies where the initial felony and the accidental killing are parts of one continuous transaction and are closely related in point of time, place and

-

causal connection.  The phrase "in the prosecution" requires proof that the killing resulted from an act which was an integral part of the felony or an act in direct furtherance of or necessitated by the felony.  Where the evidence fails to support a finding that the killing occurred "in the prosecution of" or "in the furtherance of" the underlying felony, as in the present case, there is "no basis . . . to find that the accidental death was part or a result of the criminal enterprise."  King, 6 Va. App. at 358, 368 S.E.2d at 708.

Several of our sister states have addressed whether the "status offense" of possession of a firearm by a convicted felon may serve as the predicate felony for felony murder.  Some jurisdictions require that the underlying felony be "inherently dangerous to human life" and use two different approaches to this analysis.  Under the abstract approach, the elements of the "status offense" are considered in the abstract and the factual circumstances of the felony are not considered.  See, e.g., People v. Satchell, 489 P.2d 1361 (Cal. 1971) (holding that the unlawful possession of a firearm by a convicted felon, when viewed in the abstract, is not a felony inherently dangerous to human life and will not support a felony-murder charge); State v. Underwood, 615 P.2d 153 (Kan. 1980) ("The unlawful possession of a firearm . . . when considered in the abstract is not a felony inherently dangerous to human life and will not sustain a

-

conviction for murder in the first degree under the felony murder rule.").

A second view analyzes the particular circumstances of each case to determine whether the possession of a firearm by a convicted felon is inherently dangerous.  Compare Ford v. State, 423 S.E.2d 255, 256 (Ga. 1992) (reversing felony murder conviction because the "status felony, . . . the possession of a firearm by a previously convicted felon, is not inherently dangerous"), with Metts  v. State, 511 S.E.2d 508, 510 (Ga. 1999) (affirming felony-murder conviction because the defendant's "possession of the firearm was dangerous, and life-threatening, and had 'an undeniable connection to the homicide . . . .'").

We decline to adopt a per se rule that the "status offense" of possession of a firearm by a convicted felon may never serve as the underlying felony for felony murder, or that only "inherently dangerous" felonies may serve as the predicate for felony murder.  Indeed, the Court in Heacock rejected a similar argument, stating the following:

> Yet, Heacock maintains that he is not
> criminally responsible for Wilson's death
> because, he says, that was not a foreseeable
> consequence of the criminal conduct charged
> in the indictment.  "[A]pplication of the
> [felony-murder] rule to felonies not
> foreseeably dangerous," he reasons, "would
> be unsound analytically, because there is no
> logical basis for imputing malice from the
> intent to commit a felony not dangerous to
> human life."  But nothing in [Code]

-

> § 18.2-33 limits its scope to such felonies;
> rather, that statute encompasses all
> felonious acts except capital murder and the
> several crimes particularly named in [Code]
> § 18.2-32.

Heacock, 228 Va. at 404, 323 S.E.2d at 94 (emphasis added).

Because the evidence was insufficient to establish that the
accidental killing of Thomas occurred in furtherance of the
charge of possession of a firearm by a convicted felon, the
killing cannot be considered within the res gestae of the
underlying felony. Accordingly, we reverse and dismiss
appellant's convictions for felony murder, in violation of Code
§ 18.2-33, and use of a firearm in the commission of felony
murder, in violation of Code § 18.2-53.1.

## II. EX POST FACTO APPLICATION

Next, appellant contends that when he was adjudicated
delinquent in juvenile court in 1994, his convictions did not
carry any additional consequences as proscribed by Code
§ 16.1-308. However, when the legislature amended that statute
in 1996, appellant asserts, he was no longer afforded the
juvenile protections of Code § 16.1-308 and the use of his
juvenile adjudications to establish that he was a convicted
felon constituted an impermissible ex post facto application of
the law. Essentially, appellant argues that his protected
status under Code § 16.1-308 cannot be modified by a later
legislative enactment. We disagree.

The United States Constitution, Article 1, § 10, and the Virginia Constitution, Article 1, § 9, prohibit the Commonwealth from enacting ex post facto laws.  This constitutional prohibition applies only to statutes that impose penalties, see Collins v. Youngblood, 497 U.S. 37, 41 (1990), or where the challenged change in the law "alters the definition of criminal conduct."  California Dept. of Corrections v. Morales, 514 U.S. 499, 506 n.3 (1995).  An ex post facto law has been defined as:

> "any statute which punished as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission; or which deprives one charged with crime of any defense available according to law at the time when the act was committed."

Collins, 497 U.S. at 42 (quoting Beazell v. Ohio, 269 U.S. 167, 169-70 (1925)).  "The mark of an ex post facto law is the imposition of what can fairly be designated punishment for past acts."  De Veau v. Braisted, 363 U.S. 144, 160 (1960).  If "the restriction of the individual comes about as a relevant incident to a regulation of a present situation," the law is not ex post facto.  Id.

In the present case, when appellant pled guilty to the two juvenile charges on January 21, 1994, Code § 16.1-308 provided:

> A finding of guilty on a petition charging delinquency under the provisions of this law shall not operate to impose any disabilities ordinarily imposed by conviction for a crime, nor shall any such finding operate to

-

> disqualify the child for employment by any
> state or local government agency.

In 1996, the legislature amended Code § 16.1-308 to provide:

> <u>Except as otherwise provided by law for a
> juvenile found guilty of a felony in circuit
> court whose case is disposed of in the same
> manner as an adult criminal case,</u> a finding
> of guilty on a petition charging delinquency
> under the provisions of this law shall not
> operate to impose any <u>civil</u> disabilities
> ordinarily imposed by conviction for a
> crime, nor shall any such finding operate to
> disqualify the child for employment by any
> state or local government agency.

(Amendment in emphasis).

While the 1996 amendments constituted a change in the law, they cannot be considered either an alteration to any criminal conduct prohibited, <u>see</u> <u>Morales</u>, 514 U.S. at 506 n.3, or a punishment for past acts committed. <u>See</u> <u>De Veau</u>, 363 U.S. at 160. To the contrary, the amendments excepted, or exempted, a class of individuals from the statute's protection (i.e., "juvenile[s] found guilty of a felony <u>in circuit court</u>") and clarified the nature of disabilities prohibited upon a finding of guilty (i.e., "any <u>civil</u> disabilities"). Although these changes affected the scope of collateral disabilities for a class of convicted juveniles, they were not intended to punish the juvenile's past conduct.

Nevertheless, appellant argues that his firearm conviction should be reversed because he pled guilty in juvenile court with an understanding that under Code § 16.1-308 he would suffer no

-

additional consequence for his conduct, while he is arguably being punished for that conduct under Code § 18.2-308.2. However, we have recognized that Code § 18.2-308.2 "does not criminalize an act previously committed," nor does it impose "punishment" for the underlying conduct. Dodson v. Commonwealth, 23 Va. App. 286, 295, 476 S.E.2d 512, 516 (1996) (holding that Code § 18.2-308.2 is not an unconstitutional ex post facto law). Specifically, Code § 18.2-308.2 provides:

> It shall be unlawful for (i) any person who has been convicted of a felony or (ii) any person under the age of twenty-nine who was found guilty as a juvenile fourteen years of age or older at the time of the offense of a delinquent act which would be a felony if committed by an adult, . . . to knowingly and intentionally possess or transport any firearm . . . .

In the instant case, appellant's conviction under Code § 18.2-308.2 stemmed from his unlawful possession of a firearm, an event that occurred in October 1998. It is this conduct that Code § 18.2-308.2 seeks to prohibit and the record demonstrates that appellant knew he was not "supposed to have the gun" at the time of the accidental shooting. Code § 18.2-308.2 was in existence at the time appellant committed the crimes for which he was tried in juvenile court, and he cannot now complain that the firearm statute does not apply to him.

Additionally, any ambiguity between the juvenile protections under Code § 16.1-308 and possession of a firearm by certain persons convicted as juveniles under Code § 18.2-308.2

-

must be resolved in favor of Code § 18.2-308.2. "[W]hen one statute speaks to a subject in a general way and another deals with a part of the same subject in a more specific manner, the two should be harmonized, if possible, and where they conflict the latter prevails." Thomas v. Commonwealth, 244 Va. 1, 23, 419 S.E.2d 606, 618 (1992) (citation omitted). Here, Code § 18.2-308.2, which applies to adult felons and juveniles of a certain age convicted of acts that would be felonies for adults, is the more specific statute and prevails over the general statute concerning collateral disabilities for convicted juveniles.

### III. CONCLUSION

We hold that the evidence is insufficient to establish a causal connection between the accidental killing and the underlying felony and, therefore, reverse and dismiss appellant's convictions for felony murder and use of a firearm in the commission of felony murder. However, because we find no ex post facto application of Code § 16.1-308, we affirm appellant's conviction for possession of a firearm by a convicted felon.

Affirmed, in part, and
reversed, in part.

-