COURT OF APPEALS OF VIRGINIA

Present:    Judges Benton, Humphreys and Senior Judge Hodges
Argued at Chesapeake, Virginia


BETTY KENYON

v.        Record No. 2383-02-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE JAMES W. BENTON, JR.
OCTOBER 28, 2003


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Christopher W. Hutton, Judge

(W. Alan Maust, on brief), for appellant.  Appellant submitting on
brief.

(Jerry W. Kilgore, Attorney General; Amy Hay Schwab, Assistant
Attorney General, on brief), for appellee.  Appellee submitting on
brief.


The trial judge convicted Betty Kenyon of felony child abuse and neglect in violation of

Code § 18.2-371.1(B).  Kenyon contends the evidence was insufficient to sustain her conviction.

We affirm the conviction.

I.

At eight o'clock in the morning, Shannon Williams heard a loud noise and saw Betty

Kenyon's van driving through a split-rail fence and into a neighbor's yard.  When Williams ran to

the van, he saw Kenyon's eight-year-old son climbing from the driver's side of the van to the front

passenger seat side.  Kenyon was sitting in the driver's seat.  In response to Williams's inquiry if she

was "okay," Kenyon said her son "handled [the accident] pretty well" and "it's better he learn to

wreck in my van than on the back of my Harley."  Kenyon began to move the van in reverse.  When



---

\* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Williams asked where she was going, Kenyon said she was going home and would worry later about the damaged fence.

Williams testified that one of the van's tires was flat, that the side mirror of the van "was busted," that "bricks had been knocked up [in the yard,] and the split-rail fence was busted." Williams also testified that he saw an open 22-ounce beer bottle between Kenyon's legs but could not see whether beer was in the bottle. He smelled alcohol on her breath.

Although the van's tire was flat, Kenyon drove the van several blocks to her residence. A few minutes later, Kenyon returned on foot and attempted to re-erect the fence. Williams testified that Kenyon was holding an open beer bottle and "was wobbling." Williams also testified that Kenyon "reeked of beer" and "was slurring real bad" while speaking to him. When Kenyon argued with Williams and refused to leave his yard, Williams "used the water hose to get her out of the yard and soaked her down." He said "she was that drunk [and] she wouldn't leave."

Kenyon's eight-year-old son testified that earlier in the morning before the accident Kenyon was driving the van and asked him if he wanted to drive. He moved onto Kenyon's lap and held the steering wheel of the van. He wore a seat belt. In this position, Kenyon's son's "toes were touching [the gas pedal and the brake pedal] a little bit." Kenyon's hands were over his hands as he held the steering wheel, and her feet were on the pedals. He testified that Kenyon was drinking something that "looked like coca-cola" while they were driving. After driving in that manner for three blocks, he turned the wheel "too hard" and "crashed into a wooden fence."

After the crash, Kenyon told him to move to the passenger seat. He testified that Kenyon spoke with a person at the crash site and then she drove home, where she told him to get into bed. Later, he was taken to the hospital and examined because his chest hit the steering wheel during the crash. He testified that he was not hurt.

Officer Scott Anderson went to Kenyon's residence after the accident and noted that the van had damage on the front left corner and had a flat tire. Officer Anderson testified that as Kenyon approached the door of her residence she whispered twice to someone in the house, "Tell them I've been here all night." Officer Anderson testified Kenyon was wet, "smelled a strong odor of alcohol," and had "glassy" eyes. When questioned by Officer Anderson, Kenyon told him her son was sitting on her lap and driving the van when she lost control of the van. Officer Anderson also testified that Kenyon said she drank two beers before midnight.

At the conclusion of the evidence the trial judge found that Kenyon committed a willful act that was so gross, wanton, and culpable as to show a reckless disregard for human life. He convicted her of violating Code § 18.2-371.1(B).

II.

In pertinent part, Code § 18.2-371.1(B)(1) provides that "[a]ny parent . . . responsible for the care of a child under the age of eighteen whose willful act . . . in the care of such child was so gross, wanton and culpable as to show a reckless disregard for human life shall be guilty of a Class 6 felony." We discussed the application of this statute in Barrett v. Commonwealth, 41 Va. App. 377, 585 S.E.2d 355 (2003), and described the statutory terms as follows:

> [T]he term 'gross, wanton, and culpable' describes conduct. The word 'gross' means 'aggravated or increased negligence' while the word 'culpable' means 'deserving of blame or censure.' '"Gross negligence" is culpable or criminal when accompanied by acts of commission or omission of a wanton or [willfull] nature, showing a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable result of his acts.'
>
> [Willfull is] an act done with a bad purpose, without justifiable excuse, or without ground for believing it is lawful. The term denotes '"an act which is intentional, or knowing, or voluntary, as distinguished from accidental."' The terms 'bad purpose' or 'without justifiable excuse,' while facially unspecific, necessarily

> imply knowledge that particular conduct will likely result in injury or illegality."

Id. at 400, 585 S.E.2d at 366-67 (citations omitted).

Kenyon contends the evidence failed to prove that she acted willfully and that her conduct was so gross, wanton and culpable as to demonstrate a reckless disregard for human life. The evidence was sufficient to prove, however, that Kenyon was operating the van with an open beer bottle between her legs. She reeked of alcohol when the van came to a stop after leaving the street and crashing into the fence. Kenyon's son testified that she was drinking something when she was driving. Although he testified that "it looked like coca-cola," he did not see the writing on the container and did not recall whether she was drinking from a can or a bottle. From this evidence, the trier of fact could reasonably infer she was drinking beer while driving.

The evidence also proved that after Kenyon drove the van from the crash site to her residence, which was only a few blocks away, she returned within minutes. At that time, she was slurring her speech, wobbling, and carrying a bottle of beer. Her neighbor described her as "drunk." Thus, Kenyon had an odor of alcohol emanating from her while in the van and was obviously intoxicated minutes after the crash. This evidence, when combined with testimony about the bottle of beer between her legs in the van, was sufficient for the trier of fact to find that Kenyon was intoxicated while driving.

The evidence proved that, in this condition, Kenyon put her eight-year-old son between her and the steering wheel of the van and permitted him to steer the van. The trial judge emphasized that Kenyon could not provide a justifiable reason for allowing a child, who was not near the driving age, to operate the van. Indeed, the evidence demonstrates Kenyon's knowledge that her behavior would probably result in harm. She revealed that she knew her actions could likely result in an accident because she told Williams that this was her son's "first accident" and "it's better he learn to wreck in my van than on the back of my Harley." In addition, the trial

judge noted the dangerous circumstance of the confined space behind the steering wheel and found that the child was larger than an average eight year old.

The trial judge could infer beyond a reasonable doubt that Kenyon did not have complete control of the van because of her condition and the cramped space and that Kenyon made a conscious decision to drive the vehicle in this dangerous manner. When Kenyon was drinking and her son was at the van's steering wheel, she made her conduct significantly more dangerous. In so doing, Kenyon showed an indifference to the consequences of her conduct under circumstances which made it not improbable that injury would occur to her child. See Snow v. Commonwealth, 33 Va. App. 766, 775, 537 S.E.2d 6, 11 (2000) (holding that eluding the police at high speeds in an automobile occupied by children demonstrates "willful" conduct in the care of the child that shows a reckless disregard for human life); Davis v. Commonwealth, 12 Va. App. 408, 413, 404 S.E.2d 377, 380 (1991) (noting that "the act of driving while intoxicated or recklessly . . . is inherently dangerous"). Thus, we hold that the evidence was sufficient for the trial judge to find beyond a reasonable doubt all the elements required by Code § 18.2-371.1(B)(1). Accordingly, we affirm the conviction.

Affirmed.