John J. Walsh, J.
The defendant stands indicted by the Grand Jury of this county of two homicides committed on or about the 8th day of September, 1969 at the City of Sherrill.
*1044 The indictment is in four counts. The first count charges a violation of subdivision 1 of section 125.25 of the Penal Law in that the defendant ‘ ‘ with intent to cause the death of another person, to wit, Robert A. Mumford, did cause the death of said Robert A. Mumford.” The second count charges a violation of subdivision 3 of section 125.25 of the Penal Law in that the defendant “ after having committed the crime of robbery and while in immediate flight therefrom, did cause the death of another person who was not a participant in the crime of robbery, to wit, Robert A. Mumford. ’ ’
The third count charges a violation of subdivision 1 of section 125.25 in that the defendant ‘1 with intent to cause the death of another person, to wit, Thomas P. Reilly, did cause the death of said Thomas P. Reilly.”
The fourth count charges a violation of subdivision 3 of section 125.25 in that the defendant “ after having committed the crime of robbery and while in immediate flight therefrom, did cause the death of another person who was not a participant in the crime of robbery, to wit, Thomas P. Reilly.”
On the argument of these motions, the People contend that the defendant committed the crime of robbery at a gas station in the adjoining 'County of Madison; that in immediate flight therefrom he entered the County of Oneida somewhere in the vicinity of the City of Sherrill, a short distance from the Madison County line where he was stopped by police officer Mumford of the Sherrill Police Department; that he shot Officer Mumford and also Police Chief Thomas P. Reilly who arrived at the scene; and that both officer Mumford and Chief Reilly died as a result thereof.
The People further contend that they will establish upon the trial that the defendant committed the crime of robbery in the County of Madison; that the defendant was in immediate flight therefrom; that both officer Mumford and Chief Reilly were police officers and therefore peace officers; and finally, that they were engaged at the time in performing their duties as such peace officers.
As a result, the People contend that this crime is a capital offense under the present law of this State and that they will ask the jury to invoke the penalty of death.
A series of motions is presented as follows:
MOTION TO PERMIT DEFENDANT TO WAIVE A JURY TRIAL
The defendant’s argument is that the Constitution of this State provides a constitutional right to waive a jury trial and *1045 since the indictment is silent as to the status of the deceased, the defendant may waive a jury trial.
Section 2 of article I of the Constitution provides: “ A jury trial may be waived by the defendant in all criminal cases, except those in which the crime charged may be punishable by death, by a written instrument signed by the defendant in person in open court before and with the approval of a judge or justice of the court having jurisdiction to try the offense.”
In this case, the crime charged here “may” be punishable by death, and the court is not authorized to approve such a waiver of a jury trial.
In addition, for the court here to authorize a waiver would be to create the constitutional issue delineated in United States v. Jackson (390 U. S. 570). In that case, it was held that to require a waiver of the constitutional right to a jury trial for the purpose of avoiding the penalty of death was improper.
MOTION TO DISMISS INDICTMENT
The defendant attacks the constitutionality of the murder sections of the Penal Law.
The claim is made that subdivisions 1 and 3 of section 125.25 are interdependent with section 125.30 and section 125.35 and are interrelated statutes. It is contended that the three sections are unconstitutional and illegal, and, among other things, deny equal protection of the laws, fair and impartial trial, deny a defendant judicial authority to determine a proper sentence, and are discriminatory to an accused defendant both by inclusion and exclusion.
The first argument made is that subdivision 1 of section 125.25 of the Penal Lav/, unlike section 1044 of the old Penal Law, is unconstitutional because it now defines as a crime those acts which are not criminal in nature such as excusable or justifiable homicide. The court finds no m^rit in this argument. In codifying the Penal Law, the revisers defined the requirements for criminal liability in general (§ 15.10) and provided for the defense of justification (art. 35).
The second argument is that the provisions for punishment under sections 125.30 and 125.35 are constitutionally invalid. The arguments advanced are:
1. That the determination as to the imposition of death in lieu of imprisonment legally should be a judicial determination based upon judicial knowledge and discretion and not made by a jury.
*1046 2. That the section (125.30) is illegally discriminatory in containing the provision that the victim be a police officer killed in the performance of his official duties.
3. That the statutory requisite, of ‘1 substantial mitigating circumstances which render sentence of death unwarranted”, lacks a legal, clear-cut definition or a legal standard by which the existence of ‘ ‘ substantial mitigating circumstances ’ ’ can be determined.
4. That the provision that the proceeding may be conducted with the same jury that finds a defendant guilty, precludes a defendant of a fair and impartial tribunal to determine the sentence.
5. That the admission of evidence at such proceeding, regardless of its admissibility under the exclusionary rules of evidence, places a defendant in jeopardy of his life upon hearsay and other evidence.
JURY DETERMINATION OF DEATH PENALTY
Prior to 1963, the death penalty was mandated in all cases of conviction for murder in the first degree, with two exceptions.
The two exceptions involved homicides which occurred during the commission of an underlying felony and that type of murder which was referred to as a wanton or depraved type of killing (Penal Law, § 1044, subd. 2). In those cases, the jury might, as a part of its verdict of guilty, recommend that a sentence of life imprisonment rather than of death be imposed, and the sentencing court could follow that recommendation (Penal Law, § 1045-a).
The Commission on Revision of the Penal Law and Criminal Code recommended in 1963 that the mandated death penalty be eliminated and provided that the basic sentence should be life imprisonment. Chapter 994 of the Laws of 1963, effective July 1, 1963 provided that:
1. With the consent of the court and the District Attorney, a defendant could plead guilty to the crime of murder in the first degree and receive a sentence of life imprisonment therefor.
2. If the defendant stood trial for and was convicted of murder in the first degree, and the defendant was under the age of 18 years at the time of the commission of the crime, or, if over the age of 18 years, the court was satisfied that a sentence of death was not warranted because of substantial mitigating circumstances, the sentence would be one of life imprisonment.
3. Unless the court imposed a sentence of life imprisonment as provided in 1 and 2 above, a new procedure to determine *1047 whether the death penalty be imposed was provided. This consisted of the so-called 1 ‘ two stage ’ ’ procedure.
The commission submitted a memorandum to the Legislature in which it said :
“ This two-stage procedure is generally modeled upon comparable provisions recently enacted in California and Pennsylvania, as well as upon those adopted by the American Law Institute in its Model Penal Code. The main purpose of the two-stage proceeding is to permit the jury to make the penalty determination upon the basis of comprehensive information pertinent to that issue. The one-stage or single-verdict system now prevailing in New York (Penal Law, § 1045-a) and in the vast majority of other jurisdictions necessarily restricts the scope of the jury’s information to matters legally relevant and admissible upon the issue of the defendant’s guilt or innocence of the charge, and the jurors are, therefore, ordinarily compelled to make the penalty determination almost exclusively upon the facts of the case itself. The proposed expansion of the orbit of relevancy and admissibility for purposes of the penalty determination, to include background factors and the like, provides a fairer and more enlightened medium for decision of this issue.
‘ ‘ Another virtue of the proposed system, as contrasted with the existing single-verdict procedure (Penal Law, § 1045-a) is that it eliminates the illogical and wasteful situation arising when a jury determination of guilt is negated by failure to agree upon the penalty or recommendation aspect. Through severance of the two issues and prescription of separate verdicts for each, the primary verdict of guilty stands final and recorded regardless of any further proceedings or determinations with respect to sentence.
“ Still another advantage over the existing system inheres in the procedure which permits jurors to give separate and individual treatment to each of the issues before it— (1) guilt and (2) punishment — rather than being compelled to decide both issues simultaneously under circumstances creating a likelihood that consideration and determination of one will affect or obstruct consideration and determination of the other.” (McKinney’s Session Laws of New York, 1963, pp. 2019-2020.)
The constitutionality of this procedure was considered by the Court of Appeals in June of 1965. In People v. Dusablon (16 N Y 2d 9) a jury verdict of guilt was returned on September 25, 1963 and the same jury returned a verdict of death on September 30, 1963. On appeal, one of the issues was whether the procedure could be employed in a case where the homicide *1048 was committed prior to the effective date of the statute. The court held that section 1045-a was not ex post facto. Likewise, the reception of nonlegal evidence at the sentencing trial was upheld. (See, also, People v. Rivera, 16 N Y 2d 546; People v. Foster, 16 N Y 2d 651 and People v. Jackson, 20 N Y 2d 440.)
By chapter 321 of the Laws of 1965, effective June 1, 1965, section 1045 of the old Penal Law was amended to eliminate capital punishment except in those cases in which 11 the victim was a peace officer who was killed in the course of performing his official duties ”, and provided the court was satisfied first that the defendant was over the age of 18 and there were no substantial mitigating circumstances. In such case, the procedure for jury determination of the penalty as outlined in section 1045-a was to be followed.
With the adoption of the revised Penal Law, effective September 1, 1967, section 125.30 and section 125.35 together with section 60.05 collectively restaged the substance of sections 1045 and 1045-a of the former Penal Law.
Passing to the issue of the constitutionality of the sections, the issues raised by the defendant here are those presently before the highest courts of the various States and pending before the United States Supreme Court. In the absence of a clear showing of unconstitutionality, trial courts should presume the validity of those statutes.
The effect of Witherspoon v. Illinois (391 U. S. 510), as to the exclusion of jurors who have scruples against the imposition of the death penalty, is not presently involved here. Neither is the argument that the final imposition of a death sentence after verdict constitutes cruel and inhuman treatment. We will limit the opinion to certain procedural elements of the penalty trial as distinguished from the guilt trial.
1. The argument of the defendant is that sentence is a judicial function and should not be delegated to a jury.
Prior to the amendment of the Penal Law, the verdict of guilt by the trial jury mandated the imposition of the death penalty by the Judge. To ameliorate the harshness of that rule, the Legislature has, in effect, in the special case of the killing of a police officer, empowered the jury, upon consideration of all the evidence and the court’s instruction, to assess the extent of punishment to be inflicted.
2. The argument is made that the limitation of the death penalty to a case of a police officer is illegally discriminatory. It is difficult to see how a defendant can claim discrimination in this respect.
*1049 3. The argument is advanced that due process is violated because no standards are established for determining the penalty, as a result of which a defendant has no fair notice of what factors are determinative on the penalty; he has no way of knowing whether the death penalty was invoked for arbitrary reasons; and he cannot obtain a meaningful judicial review of the sentence itself. (See “Standardless Sentencing”, 21 Stanford L. Rev., June 1969, p. 1297 et seq.)
This same argument was considered and decided adversely to defendant in People v. Anderson (69 Cal. 2d 613, 627). In that case, the California Supreme Court took note of the fact that Witherspoon v. Illinois (391 U. S. 510, supra) “mentions lack of standards in selecting between death and life imprisonment and gives no intimation that the procedure is therefore unconstitutional. ’ ’
The motion to dismiss the indictment on the ground that these sections are unconstitutional is denied.
MOTION TO DISMISS THE FELONY MURDER COUNTS
The second and fourth counts of the indictment charge the defendant with what is commonly called “ felony murder ”. In each count, it is charged that the defendant “ after having committed the crime of robbery and while in immediate flight therefrom, did cause the death of another person who was not a participant in the crime of robbery ”.
Thus, the indictment is couched in the words of subdivision 3 of section 125.25.
The gist of defendant’s argument is that the defendant has not been accused, either by the indictment itself or by separate indictment by the Oneida County G-rand Jury, of the crime of robbery committed in Madison County. The court finds no merit to this argument.
The decision in this State hold that in a felony murder case an underlying felony such as robbery is a substantial and genetically separate and disconnected offense. (People v. Nichols, 230 N. Y. 221, 226; People v. Lytton, 257 N. Y. 310, 314-315; People v. Huter, 184 N. Y. 237, 244; People ex rel. Santangelo v. Tutuska, 19 Misc 2d 308, 316, affd. 11 A D 2d 906.)
It makes no difference in what county the felony was committed.
While the prosecution must prove the underlying felony as part of its proof under Counts 2 and 4, the robbery itself is a distinct offense and is not a part of the crime of homicide nor is it an included crime.
*1050 The theory of the law is that the intent to commit the underlying felony of robbery is transferred to the homicide even though the felon does not intend to cause the death of anyone.
The motion to dismiss the second and fourth counts of the indictment is denied.