COURT OF APPEALS OF VIRGINIA


Present: Judges Annunziata, Bumgardner and Frank
Argued at Salem, Virginia


MARCUS DUENAS

                                      MEMORANDUM OPINION[*] BY
v.    Record No. 1429-01-3           JUDGE ROBERT P. FRANK
                                         OCTOBER 1, 2002

COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                  John J. McGrath, Jr., Judge

          Michael Morchower (Christopher C. Booberg;
          Morchower, Luxton & Whaley; Thorsen & Scher,
          L.L.P., on briefs), for appellant.

          Amy L. Marshall, Assistant Attorney General
          (Jerry W. Kilgore, Attorney General, on
          brief), for appellee.


     Marcus Duenas (appellant) was convicted in a jury trial of

first-degree murder, in violation of Code § 18.2-32; use of a

firearm in the commission of a felony, in violation of Code

§ 18.2-53.1; malicious wounding, in violation of Code § 18.2-51;

entering a dwelling house with the intent to commit robbery, in

violation of Code § 18.2-90; two counts of robbery, in violation

of Code § 18.2-58; one count of attempted robbery, in violation

of Code §§ 18.2-26 and 18.2-58; and three counts of abduction,

in violation of Code § 18.2-47.  On appeal, he contends the

trial court erred in refusing to sever his trial from the trial

---

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

of two codefendants, Santia Frye and Keil Turner.[1]  For the
reasons stated, we affirm appellant's convictions.

At trial, after the Commonwealth and appellant rested,
Turner testified on his own behalf.  Before that testimony, the
trial court instructed the jury, at appellant's request, that
the case against appellant was concluded and they were not to
consider any subsequent testimony as evidence against appellant.
Appellant and his attorney then left the courtroom during
Turner's testimony and declined the court's offer to permit the
defense to re-open the case and cross-examine Turner.

In his testimony, Turner admitted going to Harrisonburg
with appellant, Cook and Larry.  Although Turner denied that he
entered the home and that he had any knowledge of a robbery, he
admitted he remained in the van while the other three men went
into the house.  Turner testified he heard shots as Larry and
Cook returned to the van.  He also said he saw appellant run
across the street and jump into the van with a ".9 mm Glock" in
his hand.  This testimony directly contradicted appellant's
alibi defense that he was in Maryland at the time of the
robbery/murder.

---

[1] Andre Cook and LaLarnie Larry, while not tried at the same
time, were charged with the same offenses as appellant.  Heather
Blosser faced charges of first-degree murder and attempted
robbery as an accessory before the fact.

Appellant contends the trial court erred in not severing his trial from the codefendants' trial, in violation of Code § 19.2-262.1.  See also Rule 3A:10.  Code § 19.2-262.1 provides:

> On motion of the Commonwealth, for good cause shown, the court shall order persons charged with participating in contemporaneous and related acts or occurrences or in a series of acts or occurrences constituting an offense or offenses, to be tried jointly unless such joint trial would constitute prejudice to a defendant.  If the court finds that a joint trial would constitute prejudice to a defendant, the court shall order severance as to that defendant or provide such other relief justice requires.

Appellant does not dispute that the Commonwealth demonstrated "good cause" nor that he and his codefendants participated "in contemporaneous and related acts."  He does contend the joint trial constituted prejudice to his defense.  Therefore, appellant must demonstrate "'actual prejudice'" resulted from the joint trial.  Goodson v. Commonwealth, 22 Va. App. 61, 71, 467 S.E.2d 848, 853 (1996) (quoting United States v. Reavis, 48 F.3d 763, 767 (4th Cir. 1995)).

"Actual prejudice results only when '"there is a serious risk that a joint trial would compromise a specific trial right of [defendant], or prevent the jury from making a reliable judgment about guilt or innocence."'"  Adkins v. Commonwealth, 24 Va. App. 159, 163, 480 S.E.2d 777, 779 (1997) (quoting Barnes v. Commonwealth, 22 Va. App. 406, 412, 470 S.E.2d 579, 582 (1996) (quoting Zafiro v. United States, 560 U.S. 534, 539 (1993))).  "[P]rejudice does not exist merely because a

co-defendant has a better chance of acquittal if tried separately," Barnes, 22 Va. App. at 412-13, 470 S.E.2d at 582, nor does it exist because codefendants may have positions that are hostile to one another, Adkins, 24 Va. App. at 163, 480 S.E.2d at 779.

> "'The risk of prejudice will vary with the facts in each case,'" and the decision to permit a joint trial is entrusted to the sound discretion of the trial court. Barnes, 22 Va. App. at 412, 470 S.E.2d at 582 (quoting Zafiro, 506 U.S. at 541); see Code § 19.2-262.1.  The court must balance the specter of prejudice with "the effectiveness of . . . measures to cure any such risk, such as limiting instructions." Barnes, 22 Va. App. at 412, 470 S.E.2d at 582.

Id.

Here, appellant complains of prejudice because he was denied his right to confront and cross-examine his codefendant, Turner, who testified after appellant rested his case.[2]

Appellant is correct in his contention that the right to confront a witness is a significant trial right.  As the United States Supreme Court said, "In all criminal prosecutions, state as well as federal, the accused has a right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, 'to be confronted with the witnesses against him.'" Lilly v. Virginia, 527 U.S. 116, 123 (1999) (quoting U.S. Const.

---

[2] He also argued at oral argument that the instruction given prior to Turner's testimony prevented any effective cross-examination, as the jury was instructed that the testimony was not evidence against appellant.  However, this argument was not made on brief or at trial.  Additionally, as appellant requested the instruction, any restriction on his ability to cross-examine was of his own making.  See Brown v. Commonwealth,

amend. VI).  "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."  Maryland v. Craig, 497 U.S. 836, 845 (1990).  The right of cross-examination is an essential element of "the right of an accused in a criminal case to confront the witnesses against him."  Lee v. Illinois, 476 U.S. 530, 539 (1986).

However, the record belies appellant's contention that he was denied this right.  After the Commonwealth rested, appellant put on evidence.  Appellant then rested his case.  Turner testified in his own behalf, exonerating himself and inculpating appellant as the gunman who shot and killed the victim.  Prior to this testimony, the trial court, on appellant's motion, admonished the jury not to consider the ensuing evidence in appellant's case.[3]  The trial court told the jury:

> Henceforth any evidence that comes forward,
> Mr. Duenas has rested and everything that's
> determined regarding Mr. Duenas ultimately
> will be made on the evidence to this point

---

37 Va. App. 507, 519, 559 S.E.2d 415, 421 (2002) (finding a defendant is not allowed to approbate and reprobate).

[3] The trial court also granted Instruction No. 41:

> In the case of Marcus Duenas, the jury will
> disregard all evidence presented by or on
> behalf of Defendant Kiel Turner after Mr.
> Duenas rested his case.  The jury may
> consider rebuttal evidence presented by the
> Commonwealth, but only insofar as it seeks
> to rebut evidence presented by or on behalf
> of Mr. Duenas.

in time and nothing that comes hereafter
will be affecting Mr. Duenas' case.[4]

Appellant argues Bruton v. United States, 391 U.S. 123 (1968), controls our decision. However, this reliance is misplaced. Bruton, although involving a joint trial of codefendants, addressed the admission of a codefendant's extrajudicial confession and a limiting instruction to the jury regarding that confession. Id. at 124-25. The Bruton Court held:

> [B]ecause of the substantial risk that the jury, despite instructions to the contrary, looked to [declarant's] incriminating extrajudicial statements in determining petitioner's guilt, admission of [declarant's] confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment.

Id. at 126.

Here, no extrajudicial statement was introduced. Turner testified in court and was subject to appellant's cross-examination, if he had chosen to do so. See Tennessee v. Street, 471 U.S. 409, 413-14 (1985) (Bruton "considered whether a codefendant's confession, which was inadmissible hearsay as to Bruton, could be admitted into evidence accompanied by a limiting instruction"); United States v. Brooks, 957 F.2d 1138, 1146 (4th Cir. 1992) (Bruton creates a narrow exception to the principle that jurors are assumed to follow instructions that applies only

---

[4] As the issue was not raised at trial or on brief, we do not address whether the instructions to disregard Turner's testimony were either necessary or appropriate.

when a nontestifying codefendant's statements are facially incriminating).

Although appellant had rested, the trial court indicated he could re-open his case and cross-examine Turner. Appellant, for tactical reasons, chose not to exercise that right. In fact, during Turner's testimony, appellant chose instead to absent himself from the courtroom. In his brief, appellant's counsel characterized this withdrawal as an "attempt to distance himself from Mr. Turner's testimony." Counsel concluded that "cross-examination of Mr. Turner could not be effective after [appellant] and Mr. Turner had worked co-operatively in defense of the charges up until that point."

Appellant explains that, during the course of the trial prior to Turner's testimony, the codefendants cooperated at the defense table, giving the appearance that their cases were joined. They made joint motions, sat at the same table, and conferred with each other. Then, after the Commonwealth and appellant rested, Turner gave testimony implicating appellant, suggesting he had abandoned their alliance. Appellant maintains, if the trials had been separate, no appearance of an alliance would have been created. Turner's testimony, appellant argues, forced him to leave the courtroom and forego cross-examination, to distance himself from Turner. Essentially, appellant argues the joint trial altered his trial tactics, particularly when Turner testified against him.

The Confrontation Clause requires a defendant have a meaningful opportunity to cross-examine witnesses against him. Lee, 476 U.S. at 539. Appellant had that opportunity, which he

chose not to take for tactical reasons.  Defendants are often required to make difficult choices, but difficult choices do not violate trial rights.  See Bilokur v. Commonwealth, 221 Va. 467, 472-73, 270 S.E.2d 747, 751-52 (1980) (noting a defendant can implicitly waive the right to confront witnesses as part of a trial strategy).  Appellant "'point[s] to no trial right,' distinguishable from trial tactics, 'which was compromised or any basis for concluding the jury was prevented from making a reliable judgment about his guilt or innocence.'"  Adkins, 24 Va. App. at 163, 480 S.E.2d at 779 (quoting Barnes, 22 Va. App. at 143, 470 S.E.2d at 582).

The trial court did not compromise appellant's right. Instead, appellant chose not to exercise his right to cross-examine, in favor of a different strategy.  We, therefore, find the joint trial did not deprive appellant of any trial right.

Indeed, the logical extension of appellant's contention would eliminate joint trials when a codefendant may testify. Codefendants often minimize their participation in offenses, while inculpating the other defendants.  We find no cases, nor does appellant cite any, to support the contention that no joint trials are permitted where one of the defendants may testify. Indeed, our jurisprudence is to the contrary.  See Barnes, 22 Va. App. at 409-13, 470 S.E.2d at 580-82 (affirming trial court's denial of a motion to sever based on codefendant's witness, who was not called as part of the Commonwealth's case and who implicated Barnes in the shooting).

Appellant next contends the joint trial led to such confusion that appellant was denied his right to due process.[5] He bases this argument on a question that the jury asked concerning the differences between Instructions 22 and 21.[6] He contends the jury was confused by the differences in the instructions, which were necessitated by the different charges each defendant faced. He argues this confusion denied him a fair trial.

Appellant points to no facts that indicate the jury was so confused they could not render a "reliable judgment." Juries frequently ask questions. These questions are part of the jury system. In reviewing the record, we find the jury's verdict was based on the evidence presented to them. Ample evidence supports

---

[5] Appellant did not argue a "due process" violation at trial. When the jury inquired about the difference in language in the instructions concerning appellant and Turner, the motion for severance was renewed on the basis that the question indicated the jury was confused. While Rule 5A:18 prevents us from addressing the "due process" argument, we will consider this issue in the context of whether a joint trial prevented "'the jury from making a reliable judgment about guilt or innocence.'" Adkins, 24 Va. App. at 163, 480 S.E.2d at 779 (quoting Barnes, 22 Va. App. at 143, 470 S.E.2d at 582).

[6] Instructions 21 and 22 defined malicious wounding. Instruction 21 referred to Neil Flick as the victim, and Instruction 22 referred to Amy Steward as the victim. The instructions differed in the placement of the "principal in the second degree" language. In Instruction 21, this language was written, by hand, into the first prong of the definition. In Instruction 22, this language was included as the fourth prong of the definition of malicious wounding. The jury questioned whether this difference was important. The judge told them the difference was "just a matter of style" and "done for convenience as opposed to any other reason." The jury had no further questions.

their verdicts, including finding appellant guilty of first-degree murder under the felony-murder doctrine.[7]

The testimony of Larry and Cook proved that they, together with appellant and Turner, conspired to rob Emanual Kingsley at the home of Anthony Bruck, where Kingsley was staying. They armed themselves for that purpose. The testimony proved appellant entered Brunk's house with the others, armed with a .9 mm firearm. When they discovered Kingsley was not at home, they waited for his return. While waiting, the men assaulted the people who were in the home, Shana Curtis, Neil Flick, and Brunk.

When Kingsley entered the house, he was shot with a .9 mm gun. Larry and Cook, after hearing gunshots, saw appellant run from the murder scene with a gun in his hand. Appellant, in the van, admitted to Larry and Cook that he shot Kingsley after a struggle. Brunk identified appellant as one of his assailants.

From this evidence, the jury could have concluded that appellant was the triggerman, but they did not have to find he shot Kingsley to convict him of the murder. "[A]ll of the criminal participants in the initial felony may be found guilty of the felony-murder of the victim so long as the homicide was within the res gestae of the initial felony." Wooden v. Commonwealth, 222 Va. 758, 762, 284 S.E.2d 811, 814 (1981). Here, the murder was in furtherance of the robbery. Therefore,

_____

[7] The felony-murder doctrine is codified in Code § 18.2-32. "The statute, of ancient origin, has been construed to mean that a killing in the commission of or attempt to commit one of the enumerated felonies is murder of the first degree." Haskell v. Commonwealth, 218 Va. 1033, 1035 n.1, 243 S.E.2d 477, 478 n.1 (1978).

the felony-murder doctrine applies.  Whether he killed Kingsley himself, or one of the other men did, the evidence was sufficient to prove appellant guilty of first-degree murder.

The joint trial of appellant, Turner, and Frye did not compromise a specific trial right of appellant nor did it prevent the jury from making a reliable judgment about his guilt or innocence.  For the reasons stated above, we affirm the convictions.

<u>Affirmed.</u>